**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**David J. ZUGAY, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 8, 1999.

Filed Jan. 19, 2000.

Kevin Prosser, Duncannon, for appellant.

R. Scott Cramer, District Attorney, Duncannon, for Commonwealth, appellee.

Before FORD ELLIOTT and HESTER, JJ., and CIRILLO, President Judge Emeritus.

CIRILLO, President Judge Emeritus:

¶ 1 David Zugay appeals from his December 17, 1998 sentence of imprisonment for seven days to 18 months, plus a $500.00 fine, imposed following his jury trial and conviction for driving under the influence of alcohol (DUI) under both 75 Pa.C.S. § 3731(a)(1) and § 3731(a)(4).[1]

¶ 2 The trial court has not filed an opinion,[2] and the Commonwealth has not included a statement of facts in its brief. The following recitation of facts is gleaned directly from the record certified on appeal.

¶ 3 On January 10, 1998, at 2:00 a.m., Trooper Michael Paul Hogan, a State Police Trooper in Perry County with 14 years of experience including approximately 75 DUI arrests, and his partner, Trooper Todd Graybill, received a call to proceed to the scene of an accident involving a truck. Because the Troopers were so busy responding to accidents that night, Trooper Hogan testified that he and his partner had called a tow truck driver and had authorized the driver to pull the vehicle back on to the road before they arrived on the scene. When they arrived at 2:21 a.m., the driver of the vehicle was not present, but the tow truck operator had pulled the truck back on to the road as requested. The officers observed evidence that the truck had gone down a slight embankment, and they could see the tire tracks in the grass and debris there. In the direction of the vehicle's travel, the road curves to the

---

1. The two are not distinct but merely alternatively based offenses. *Commonwealth v. McCurdy*, 558 Pa. 65, 73–74 n. 5, 735 A.2d 681, 686 n. 5 (1999) (disapproving *Commonwealth v. Slingerland*, 358 Pa.Super. 531, 534–36, 518 A.2d 266, 268 (1986)). This having been Zugay's first DUI conviction, the offense is classified as a second-degree misdemeanor, with a mandatory minimum sentence of 48 hours of incarceration, a longest allowable minimum sentence of one year, a longest allowable maximum sentence of two

years, and a maximum fine of $5,000.00. 18 Pa.C.S. § 1104; 42 Pa.C.S. §§ 9755(b), 9756(b); 75 Pa.C.S. § 3731. Zugay's sentence thus falls within the statutory limits.

2. The court did file a one-page memorandum decision dated January 25, 1999, which addresses the reasons for the length of sentence imposed. This memorandum, however, does not contain a statement of the facts.

left, while the vehicle had gone straight and down the embankment. There was no snow or ice on the road that night, and it was not raining or snowing; the Trooper testified that the road conditions were normal and not adverse. There were no skid marks on the road. At 2:27 a.m., Zugay arrived, having been driven to the scene by Marilyn Miller, his girlfriend. He got out of the vehicle and walked toward the officers, and in doing so, he staggered.

¶ 4  Trooper Hogan testified that, in response to the officers' question, Zugay told them that he had been the driver of the truck. Zugay did not appear to be injured, but Trooper Hogan noticed that although Zugay faced him with his body, he kept his head turned unusually far to his left as he conversed with him. The Trooper asked Zugay for his driver's license, and he handed Trooper Hogan his military identification card. The Trooper returned it and asked again for his driver's license, which Zugay then gave him. Trooper Hogan asked Zugay why he had his head turned so far to his left, but Zugay did not respond; the Trooper asked him to turn his head and face him.

¶ 5  Trooper Hogan testified that Zugay's eyes were bloodshot, that he smelled of alcohol, that his speech was slurred and very slow, and that he was swaying back and forth.

¶ 6  At this point, Trooper Hogan read Zugay his *Miranda*[3] rights. Zugay, in response to the Trooper's questions, then admitted again that he had been the driver of the truck, that he had been alone, and that he had consumed no alcohol between the time of the incident and the present conversation. He also stated that he had been drinking in Harrisburg, approximately ten miles from the accident location, where he had consumed approximately six beers. He explained that someone had picked him up at the scene and had taken him home, but that he could not recall who had done so, because he might have blacked out. He did not explain how the

accident happened, but he stated that it had occurred at midnight.

¶ 7  Trooper Hogan testified that he then performed field sobriety tests and noted that Zugay's responses were unusually slow and that he appeared confused and incoherent. It was Trooper Hogan's opinion that Zugay was intoxicated. Trooper Hogan then arrested him for DUI. Due to his statement about blacking out, together with the fact that Miller had expressed concern that he might be injured, Zugay was transported to a hospital, rather than to the state police barracks, so that a blood sample might be obtained for later testing. The blood was drawn at 3:57 a.m., 90 minutes after Zugay had arrived on the scene, and the Trooper retained the sealed sample. It was later transported to a State Police laboratory in Harrisburg. Although Zugay had refused to sign admissions forms, he was then taken for examination within the emergency area of the hospital. At that point, the Troopers left the hospital, but when Trooper Hogan telephoned the hospital at 7:00 a.m., a doctor told him that Zugay and Miller had left the emergency room area before Zugay had been examined.

¶ 8  Trooper Hogan's opinion was that Zugay had been operating his vehicle under the influence of alcohol and that he had been incapable of driving safely due to his intoxicated state.

¶ 9  The medical laboratory technician testified as to her procedures in drawing the blood. A forensic scientist with the State Police Crime Lab in Harrisburg testified to receiving the sealed blood and performing a Blood–Alcohol Content (BAC) test on it, which indicated a BAC level of 0.192%. The Commonwealth presented no evidence to relate this back to the time of driving.

¶ 10  Zugay presented the testimony of Marilyn Miller, his paramour. She testified that he had arrived home that evening

**3.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct.  1602, 16 L.Ed.2d 694 (1966).

at approximately 11:00 p.m., while the news was on. Zugay immediately went to the refrigerator and got a beer, and he sat down and watched television with her. She testified that he exhibited no signs of intoxication when he arrived at home, and that she heard someone's vehicle pulling away just before he walked in. When she asked him where his truck was, he answered that it was down the road and that he had wrecked it. She testified that she was concerned about the expensive tools in it being stolen, and that she wanted to go and see if they might be able to get it home themselves, but that he thought that would be impossible. Though it took her some time to convince him, she eventually did, and she drove them there. Although it was not raining, she testified that the road surface was wet. She there observed that the truck was on its side and down an embankment. They returned home, but Zugay did not want to do anything, and he continued drinking. Miller testified that she called a tow truck and that the person who answered told her that the truck operator was out and would call her back. She received a call back some time after 1:00 a.m. from the driver, whom she agreed to meet at the scene. Zugay stayed at their house, drinking. Miller went out to meet the driver, who told her at the scene that he would have to report the accident to the police. After he did, he told Miller to bring Zugay back to the scene so that he could be questioned by the police. She did so.

¶ 11 Trooper Todd A. Graybill, Trooper Hogan's partner that night, testified in rebuttal for the Commonwealth. He testified that he spoke primarily with Miller on the scene. She told him that Zugay arrived home that night at 1:00 a.m., lay down on the couch, and immediately fell asleep. She told the Trooper she had difficulty waking Zugay up, but that when she did, he told her his truck was down the road. In response to his question, Miller specifically told the Trooper that Zugay had not had anything to drink since he had come home.

¶ 12 Miller was convicted of DUI under both section 3731(a)(1) and section 3731(a)(4) of the Vehicle Code and was later sentenced. Post-sentence motions were filed, answered, and denied. This timely appeal followed. Requesting a new trial or re-sentencing, Zugay presents the following three issues for our resolution:

1. Is it reversible error to allow the admission of evidence concerning a defendant's blood[-]alcohol content when the last time the defendant could have driven was at least three (3) hours before the blood[-]alcohol [test] was taken, the defendant's blood[-]alcohol content was .192[%] at the time of the test, the defendant submits evidence that he drank alcohol between the time of driving and the time of the test, and the Commonwealth fails to introduce an expert to relate the BAC at the time of the test back to the time of driving?

2. Is it a violation of the *corpus delicti* rule and reversible error to allow a jury to hear a defendant's admissions in a driving under the influence case, when no evidence is presented to show that the defendant was driving the vehicle prior to the admission being introduced?

3. Is it a manifest abuse of discretion to use an independent witness's testimony as an aggravating factor in fashioning a sentence for a defendant that did not testify, such that the defendant's sentence should be suspended and the defendant's case should be remanded for resentencing?

¶ 13 Immediately prior to trial, Zugay filed a motion in *limine* seeking to exclude the BAC result due to the Commonwealth's stated intent not to present expert testimony to relate the BAC result back to the time of driving; his motion was denied. Zugay's first issue is, in part, a challenge to the propriety of the denial of his motion. "A motion in *limine* is a procedure for obtaining a ruling on the admissibility of evidence prior to or during trial, but before the evidence has been offered."

*Commonwealth v. Johnson*, 399 Pa.Super. 266, 268–70, 582 A.2d 336, 337 (1990), *aff'd*, 534 Pa. 51, 626 A.2d 514 (1993). Such a ruling is similar to that upon a motion to suppress evidence. *Commonwealth v. Gordon*, 543 Pa. 513, 517, 673 A.2d 866, 868 (1996). However, we apply an evidentiary abuse of discretion standard to the denial of a motion in *limine*. *Commonwealth v. Chmiel*, 558 Pa. 478, 493–94, 738 A.2d 406, 414 (1999) (petition for cert. filed Nov. 11, 1999).

> Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and we will not reverse the court's decision on such a question absent a clear abuse of discretion. *Commonwealth v. Weber*, 549 Pa. 430, 436, 701 A.2d 531, 534 (1997).

*Id.*

■ ¶ 14 Zugay's challenge to the admissibility of the evidence in his first issue is also inextricably intertwined with his implicit challenge to the jury's determinations as to which evidence to credit and how much weight to give it. Where issues of credibility and weight of the evidence are concerned, it is not the function of an appellate court to substitute its judgment based on a cold record for that of the trial court. *Commonwealth v. Paquette*, 451 Pa. 250, 257, 301 A.2d 837, 841 (1973); *McElrath v. Commonwealth*, 405 Pa.Super. 431, 441–43, 592 A.2d 740, 745 (1991). A new trial is warranted on a challenge to the weight of the evidence only if the verdict is so contrary to the evidence as to shock one's sense of justice. *McElrath* at 745. Furthermore, issues of credibility are left to the trier of fact; the jury is free to accept all, part, or none of the witnesses' testimony. *Commonwealth v.*

*Pirela*, 398 Pa.Super. 76, 83–84, 580 A.2d 848, 852 (1990); *Commonwealth v. Vitacolonna*, 297 Pa.Super. 284, 288–90, 443 A.2d 838, 841 (1982).

■ ¶ 15 Concerning Zugay's challenge to weight and credibility of the evidence, given the stringent standard, along with the facts and testimony herein, we do not find the verdict so shocking to our sense of justice so as to warrant a new trial. The jury credited the evidence provided by the Commonwealth and discredited that provided by Zugay, and it was proper for it to do so. Specifically, the jury disregarded the evidence Zugay presented regarding his supposed drinking between the time of the accident and the blood sample being drawn. This was proper, for the Commonwealth's evidence indicated that both he and Miller had said, on the night of the incident, that he had had nothing to drink since the accident.

¶ 16 However, even viewing the evidence in the light most favorable to the Commonwealth, Zugay is correct that "the last time the defendant could have driven was at least three (3) hours before the blood[-]alcohol [test] was taken." There was conflicting evidence as to when he last drove the vehicle.[4] Giving the benefit of the doubt to the Commonwealth as verdict-winner, the latest time must be credited. However, the evidence of the latest time was of Zugay's arrival at home at 1:00 a.m., not of his last driving. In the absence of direct evidence on when he last drove, we reasonably infer, giving the benefit of our inference to the Commonwealth as we must, that Zugay's residence was three minutes from the scene of the accident.[5] Thus, since he arrived home at 1:00

---

4. When being interviewed by Trooper Hogan at the scene, Zugay said he last drove at midnight. Miller testified at trial that he arrived home at 11:00 p.m. However, when she spoke with Trooper Graybill at the scene, Miller stated that Zugay had arrived home at 1:00 a.m.

5. The testimony of Miller, although discredited, together with her admitted statements to the Trooper, constituted the only relevant evidence on the point. Her testimony indicated she drove back and forth between their residence and the scene of the accident three times during the course of the evening, and we infer from her testimony that it took very little time for her to do so. Her statement to the trooper, admitted without objection, was that Zugay told her the truck was "down the

a.m., we infer he last drove at 12:57 a.m. The blood sample was drawn at 3:57 a.m. Therefore, the blood sample was drawn within three hours of the last time Zugay drove the truck. At that time, Zugay's blood-alcohol content was 0.192%, and he had had nothing to drink in the interim.

¶ 17 The question presented in the context of the motion in *limine,* then, is whether this evidence was properly ruled to be admissible without a Commonwealth expert to relate the BAC at the time of the test back to the time of driving.[6]

¶ 18 Zugay was convicted of violating both subsection (a)(1) and subsection (a)(4) of section 3731 of the Motor Vehicle Code. 75 Pa.C.S. §§ 3731(a)(1), (a)(4).[7] Preliminarily, we find that the evidence of Zugay's BAC test was admissible against Zugay on the charge of violating (a)(1). The general standard of subsection (a)(1) permits proof of the offense by any evidentiary means, including evidence of outward symptoms such as bloodshot eyes, irregular driving patterns, odor of alcohol, slurred speech, admissions of drinking, etc. Our supreme court has recently reiterated:

This Court has explained that "subsection (a)(1) is a general provision and provides no specific restraint upon the Commonwealth in the manner in which it may prove that an accused operated a vehicle under the influence of alcohol to a degree which rendered him incapable of safe driving." *Commonwealth v. Loeper,* 541 Pa. 393, 402–03, 663 A.2d 669, 673–74 (1995).

*McCurdy, supra* at 70–71, 735 A.2d at 684. *See also Commonwealth v. Montini,* 712 A.2d 761 (Pa.Super.1998). Along with other types of evidence, BAC evidence may also be used to prove charges under subsection (a)(1). *Id.* Thus:

Where a defendant is charged with a violation of section 3731(a)(1), a .10% test result is "but one piece of evidence to be considered in deciding whether the person was under the influence." *Commonwealth v. Sloan,* 414 Pa.Super. 400, 409–11, 607 A.2d 285, 290 (1992).

*Commonwealth v. Michuck,* 454 Pa.Super. 594, 597–99, 686 A.2d 403, 405 (1996). No expert testimony is needed in order for BAC evidence to be admissible in a convic-

---

road." Our inference is thus reasonable. Nonetheless, despite our inference that it was three minutes away, due to the paucity of the evidence on this point, and due to the arguably arbitrary nature of our three-minute inference, we have also analyzed the question as if Zugay's residence were more than three minutes from the accident site. Although we believe the dual approach is also necessary given *Commonwealth v. Kelley,* 438 Pa.Super. 289, 652 A.2d 378 (1994), we note that the present case is readily distinguishable from *Kelley* in that here, there was evidence on the record, though conflicting, of when Zugay last drove. See *Kelley,* supra, at 383 n. 5.

6. We note for purposes of clarity that Zugay's first issue does not include a challenge to the sufficiency of the evidence but only to its admissibility.

7. The relevant sections of this statute at the time of his offense on January 10, 1998, provided, as they do today:
(a) OFFENSE DEFINED.—A person shall not drive, operate or be in actual physical control of the movement of a vehicle in any of the following circumstances:

(1) While under the influence of alcohol to a degree which renders the person incapable of safe driving.

\* \* \*

(4) While the amount of alcohol by weight in the blood of:
(i) an adult is 0.10% or greater....
(a.1) PRIMA FACIE EVIDENCE.—
(1) It is prima facie evidence that:
(i) an adult had 0.10% or more by weight of alcohol in his or her blood at the time of driving, operating or being in actual physical control of the movement of any vehicle if the amount of alcohol by weight in the blood of the person is equal to or greater than 0.10% at the time a chemical test is performed on a sample of the person's breath, blood or urine;
(2) For the purposes of this section, the chemical test of the sample of the person's breath, blood or urine shall be from a sample obtained **within three hours** after the person drove, operated or was in actual physical control of the vehicle.
75 Pa.C.S. §§ 3731(a)(1), (a)(4), (a.1) (emphasis added).

tion for (a)(1), since a defendant may be convicted of that offense "despite the fact that the defendant's blood-alcohol level could not be related back to the time of the defendant's driving." *Commonwealth v. Weis*, 416 Pa.Super. 623, 638–40, 611 A.2d 1218, 1227 (1992). *See also Commonwealth v. Downing*, 739 A.2d 169 (Pa.Super.1999); *Commonwealth v. Curran*, 700 A.2d 1333 (Pa.Super.1997). The amount of time elapsed between the time of last driving and the blood sample is not dispositive of its admissibility in a prosecution under subsection (a)(1) but only affects the weight of the evidence, which is fully subject to attack through evidence for the defendant. *McCurdy*, *supra* at 70–73, 735 A.2d at 684–85 (citing *Curran*, *supra* at 1336; *Commonwealth v. Phillips*, 700 A.2d 1281, 1288 (Pa.Super.1997) (plurality), *appeal denied*, 555 Pa. 718, 724 A.2d 934 (1998)). Finally, our supreme court in *McCurdy* has recently noted that BAC evidence may be used as *prima facie* evidence, without reference to subsection (a.1) ("Prima Facie Evidence"), in a case brought under subsection (a)(1). *McCurdy* at 72 n. 4, 735 A.2d at 685 n. 4. Therefore, the evidence was admissible without relation-back testimony to prove the charge that Zugay had violated 75 Pa.C.S. § 3731(a)(1).

■ ¶ 19  In contrast to subsection (a)(1), subsection (a)(4) of the DUI statute is an "illegal *per se* " law, making it illegal to drive at the same time as one's BAC is 0.10% or greater.[8]  This subsection mandates strictly that the Commonwealth prove beyond a reasonable doubt that a defendant's BAC was over 0.10% **while** he was actually driving.[9]  75 Pa.C.S. § 3731(a)(4).

¶ 20  Because (a)(4) does not specify a requisite period of time after driving within which BAC results may not exceed the specified level, but instead strictly prohibits driving **while** exceeding the proscribed limit, the Commonwealth has often presented expert relation-back testimony in close cases to extrapolate or "relate back" the test results, in order to prove what the defendant's BAC would likely have been **while** driving.[10]  In 1992, our supreme court required the Commonwealth to present such expert relation-back testimony in the companion cases of *Commonwealth v. Modaffare*, 529 Pa. 101, 601 A.2d 1233 (1992), and *Commonwealth v. Jarman*, 529 Pa. 92, 601 A.2d 1229 (1992).[11]  After not-

**8.** An "illegal *per se* " law is a crime that can be proven only through objective, scientific evidence. *See People v. Cancel*, 137 Misc.2d 260, 520 N.Y.S.2d 509, 512 (N.Y.Crim.Ct. 1987).

**9.** Subsection (a)(4) "requires that the Commonwealth satisfy its burden **solely** through competent BAC test results...." *Commonwealth v. Loeper*, 541 Pa. 393, 403, 663 A.2d 669, 674 (1995) (emphasis added). No other evidence is relevant to a conviction under that subsection. *Id.* When unaccompanied by a charge under (a)(1), an (a)(4) trial will permit of no other but scientific BAC testing evidence. *Id.* Here, however, the two charges were brought together.

**10.** Relation-back or retrograde extrapolation is the process of inferentially projecting data into an unknown area and thus achieving a conjectural knowledge of the unknown. It is common knowledge that the level of alcohol in the bloodstream is not static. Typically, an expert proffering retrograde extrapolation evi-

dence will apply several factors to the operator's blood alcohol results and arrive at an educated estimate of the operator's BAC at the time he or she was driving. These factors include, but are not limited to, tolerance to alcohol, rate of alcohol absorption and evaporation, the lapse of time between the testing and operation of the vehicle, metabolic rate and weight of the individual, time and specifics of the most recent food eaten, and the lapse of time between the operator's last drink and the operation of the vehicle. It should be noted that such factors are necessarily individualized, cannot be applied generally, and are not within the common knowledge of laypersons or even judges. They therefore require expert testimony. *See* Robert J. Schefter, *Under the Influence of Alcohol Three Hours After Driving: The Constitutionality of the (a)(5) Amendment to Pennsylvania's DUI Statute*, 100 Dick.L.Rev. 441 (1996).

**11.** *See also ·Commonwealth v. Gonzalez*, 519 Pa. 116, 546 A.2d 26 (1988) (requiring the Commonwealth to present relation-back testi-

ing the ten-percent margin of error associated with BAC testing, the supreme court compared our DUI statute to those of other states:

> In 75 Pa.C.S. § 3731(a)(4), *supra*, it is made an offense to drive a vehicle **while** one's blood alcohol content is 0.10% or greater. In contrast, we note that the legislatures of certain other states have enacted statutes making it an offense to drive with a blood alcohol content of 0.10% "as shown by" or "as determined by" a blood alcohol test administered within a specified time **after** driving has ceased. . . . Our statute, however, is more limited in its focus. It makes one's blood alcohol content **while** driving the pivotal issue.

*Modaffare* at 104, 601 A.2d at 1235; *Jarman* at 95, 601 A.2d at 1230 (identical text in both cases) (citation omitted) (emphasis added). The supreme court considered medical testimony that "a person's blood alcohol level fluctuates with the passage of time, such that the level gradually rises after drinks have been consumed until a peak is reached roughly one hour after the drinking has ceased, and that, thereafter, the level declines." *Modaffare* at 105, 601 A.2d at 1235; *Jarman* at 96, 601 A.2d at 1231. With this observation in mind, the court required the Commonwealth to proffer expert relation-back testimony to secure a conviction under 75 Pa.C.S. § 3731(a)(4) in cases where there is a weak inference of guilt:

> In cases where test results show levels of alcohol **significantly** above 0.10% and where blood samples have been obtained **soon** after suspects have been stopped, there is a very strong inference that

blood alcohol levels were in the prohibited range while driving. However, where . . . the blood test result **barely** exceeded the 0.10% level and the lapse of time between driving and the taking of the blood sample was **not insignificant**, the inference of guilt is weakened.

*Modaffare* at 105, 601 A.2d at 1235; *Jarman* at 96, 601 A.2d at 1231 (emphasis added). The court held that where only a weak inference of guilt exists, a conviction under (a)(4) based upon a BAC test without relation-back testimony necessarily rests upon "unbridled speculation" by the fact-finder as to whether appellant's blood alcohol level was at or above 0.10% **while** driving. *Id.*[12] "It is well recognized, however, that a criminal conviction cannot be based upon mere speculation or conjecture." *Id.*, citing *Commonwealth v. Holzer*, 480 Pa. 93, 98, 389 A.2d 101, 104 (1978). *See also Commonwealth v. Allen*, 394 Pa.Super. 127, 575 A.2d 131 (1990) (Cirillo, P.J., dissenting) (the Commonwealth must meet its burden of proving at trial that defendant's BAC is 0.10% or above **at the time he is driving**); *Slingerland, supra* (Cirillo, P.J., dissenting) (same).

¶ 21  In response to the mandate of *Jarman* and *Modaffare* that the Commonwealth present relation-back evidence in close cases brought under (a)(4), our legislature revisited the DUI statute in 1992 by adding the short-lived section 3731(a)(5) and its companion defense in former section 3731(a.1).[13] These were subsequently stricken as unconstitutional by our supreme court. *See Commonwealth v. Barud*, 545 Pa. 297, 302, 681 A.2d 162, 164

---

mony in cases where BAC results are **under** 0.10% and the period of time since driving is significant).

**12.** In both cases, since the Commonwealth's experts had been unable to present positive relation-back testimony, only a weak inference of criminal behavior was available. (This, in turn, was so because the BAC levels only barely exceeded the 0.10% level after a significant lapse of time—0.114% after one hour in *Jarman* and 0.108% after one hour

and fifty minutes in *Modaffare*.) Therefore, our supreme court held, impermissible speculation had occurred. It reversed both convictions. *Modaffare, supra* ; *Jarman, supra.*

**13.** The intent of the legislature in enacting (a)(5) was to ease the prosecution's burden of proving a case under (a)(4) in light of *Modaffare* and *Jarman. See* Schefter, *supra* at 467; Pa. House Legis. J., Nov. 17, 1992, at 1853.

(1996) (holding (a)(5) and (a.1) unconstitutionally void for vagueness, overbreadth, and creating an impermissible presumption of guilt).

¶ 22 However, in *Commonwealth v. Yarger*, 538 Pa. 329, 648 A.2d 529 (1994), our supreme court abandoned any need to distinguish weak inferences of guilt from strong when it discarded the requirement that the Commonwealth present relation-back testimony in (a)(4) prosecutions. It held repeatedly:

> We hold that the Commonwealth is not required to present expert testimony to prove that a driver operated a vehicle with a blood alcohol content of 0.10% or greater.

> \* \* \*

> Upon consideration of this issue, **we find no reason to require the Commonwealth to present an expert witness in these matters.** We hold that once the Commonwealth has established that the driver's blood alcohol content reflects an amount above 0.10%, the Commonwealth has made a *prima facie* case under 75 Pa.C.S. § 3731(a)(4). At this point, the defendant is permitted to introduce expert testimony to rebut the Commonwealth's *prima facie* evidence. If the defendant decides to rebut the *prima facie* evidence against him with expert testimony, then the Common-

wealth may present its own expert to refute this testimony.

> \* \* \*

> We find it unnecessary to require the Commonwealth to present expert testimony in cases where the driver has failed to rebut the Commonwealth's *prima facie* evidence that his blood alcohol content was 0.10% while operating a motor vehicle.

*Yarger* at 334–35, 648 A.2d at 531–32 (footnote omitted) (emphasis added). The court in *Yarger* did not qualify the above language with any temporal limitations.[14]

¶ 23 The *Yarger* court premised its change of procedure on the recognition that the previous "case-by-case review" of convictions under section 3731(a)(4) was "unworkable." *Id.* at 335, 648 A.2d at 532. Confusingly, however, the court continued this approach by finding Yarger's BAC level of 0.18% to have been "significantly" above the legal limit, and the time period of forty minutes not to have been lengthy.[15] *Yarger*, 538 Pa. at 334, 648 A.2d at 531. The court thus held that no relation-back testimony had been required and affirmed the conviction. The procedural change mandated in *Yarger* was not applied retroactively.

¶ 24 Thereafter, our legislature enacted (a.1) as set forth above, which our court

**14.** *See Commonwealth v. Montini*, 712 A.2d 761, 766–67 (Pa.Super.1998) (calling upon our supreme court to revisit *Yarger* due to its impermissible shifting of the burden and because it is still not clear exactly when the Commonwealth must present expert relation-back testimony); *Commonwealth v. Curran*, 700 A.2d 1333, 1336 (Pa.Super.1997) (Schiller, J., concurring) (same). *See also McCurdy*, *supra* at 72 n. 4, 735 A.2d at 685 n. 4 (acknowledging *Montini*'s call for revisiting *Yarger* but stating, "There is no basis in this case, however, for reexamining *Yarger* or its holding.... ").

**15.** Because of this finding under the *ad hoc* approach, some courts espoused an alternative view of *Yarger* that, despite its expansive and repeated holding, it should be limited and

read only to mean that if the defendant's BAC was **significantly** above 0.10% and the time between driving and the administering of the blood test was relatively **short** (as was the case in *Yarger*), then expert relation-back testimony is not required to prove that a driver operated a vehicle with a BAC of 0.10% or greater. *Montini*, *supra*; *Curran*, *supra* (Schiller, J., concurring). Under this view, only in such cases could the Commonwealth merely make out a *prima facie* case that the defendant's BAC registered at least 0.10% and forego expert relation-back testimony (except as needed for purposes of rebuttal). The Commonwealth however, still needed to present such testimony in its case-in-chief if the BAC were only slightly above 0.10% and/or the time elapsed were relatively long.

has found adopted the approach of *Yarger*, *supra*, and added a three-hour limit to it. *Commonwealth v. Weir*, 738 A.2d 467, 470 (Pa.Super.1999). This provision allows the Commonwealth to prove beyond a reasonable doubt that a person was driving **while** having a BAC of 0.10% or over simply by introducing *prima facie* proof that the defendant had a BAC of 0.10% or above within **three hours** of driving. 75 Pa.C.S. § 3731(a.1). Once the Commonwealth has done so, the burden then shifts to the defendant to rebut his guilt, as in *Yarger*, *supra*. Our court has not ruled on the constitutionality of (a.1),[16] and that issue is not before us today.

¶ 25 However, a panel of our court has recently considered the effect of subsection (a.1) upon the prior requirement that relation-back testimony be utilized. *Weir*, *supra*. The panel quoted the sections of *Yarger* also excerpted above but did not acknowledge that court's retention of the *ad hoc* approach. *Id.* The court then found the statute a reflection of these same passages:

> [W]e conclude that the clear, unambiguous words of the statute indicate that the Commonwealth is no longer required to present relation-back expert testimony in order to convict a defendant of DUI under subsection 3731(a)(4). Rather, where the blood sample is obtained within three hours after the person has operated his motor vehicle, and the results of the test reveal that the person's BAC is at or above 0.10%, the Commonwealth has established a *prima facie* case that the person has violated subsection 3731(a)(4). At this point, the defendant may present an expert witness to rebut the Commonwealth's *prima facie* case, following which the Commonwealth

may present its own expert to refute the defendant's expert's testimony.

*Weir*, *supra*. Similarly, another panel of our court recently considered *Yarger*, albeit not in the context of subsection (a.1). *See Commonwealth v. Downing*, 739 A.2d 169, 171–72 (Pa.Super.1999). In contrast to the *Weir* panel, the *Downing* panel did examine the *Yarger* court's retention of the *ad hoc* approach and acknowledged that it has caused confusion. *Id.* at 171 n. 5. However, the *Downing* panel concluded that our supreme court had interpreted and resolved this ambiguity in *Commonwealth v. Loeper*, 541 Pa. 393, 663 A.2d 669 (1995), wherein that court noted that in post-*Yarger* cases, the "Commonwealth is not required to present expert evidence of 'relation back' in order to establish a *prima facie* case." *Id.* at 403, 663 A.2d at 674 n. 7,[17] *quoted in Downing*, *supra* at 172.

¶ 26 We are obligated to observe that our court has thus, for our purposes, excised the ambiguity in *Yarger* by finding that the supreme court intended in that case to abandon completely any requirement for relation-back testimony, unless the defendant presents his own rebuttal expert in response to the Commonwealth's *prima facie* evidence, despite that court's retention of the *ad hoc* approach. *Downing*, *supra*. We also must conclude that 75 Pa.C.S. § 3731(a.1) mandates the same approach, though it adds a temporal specification. *Weir*, *supra*.

¶ 27 Therefore, we find that the evidence of Zugay's BAC was admissible as *prima facie* evidence for purposes of conviction of (a)(4), through (a.1), without an expert's relation-back testimony, due to

---

**16.** We acknowledge Zugay's citation in his brief to *Commonwealth v. Murray*, 1999 PA Super. 34, a decision by a panel of this court holding subsection (a.1) unconstitutional. However, as pointed out by the Commonwealth in its brief, reargument *en banc* was granted on April 30, 1999 in that case and the panel opinion withdrawn. It is thus of no precedential value, and subsection (a.1)

stands at this time, no decision in that case having been announced as of this writing.

**17.** *Loeper* was, however, a pre-*Yarger* case; the court's footnote was, therefore, *obiter dictum*. Moreover, the footnote also relied upon 75 Pa.C.S. § 3731(a)(5), the subsection later held unconstitutional in *Barud*.

its having been obtained within three hours of operation of the vehicle.

■ ¶ 28 We also find the BAC evidence would have been admissible for purposes of proving that Zugay drove while having a BAC over 0.10% under subsection (a)(4), even if it had not been obtained within three hours, due to our court's current interpretation of *Yarger*, by which we are bound. *Downing, supra.* If more than three minutes had elapsed between Zugay's last time of driving and his entry of his house at 1:00 a.m. (which, as above, it did not), then the length of time between driving and the blood sample being drawn would have been greater than three hours. In such instance, (a.1) would be inapplicable, but under our law as it stands today, the approach embodied in (a.1) would still apply through *Yarger*, and the evidence would still be admissible as *prima facie* evidence regardless of when it was gathered. As per the holding of our supreme court in *Yarger*, interpreted through *Downing, supra*, the *prima facie* approach now applies to all BAC tests showing a result of 0.10% or above. The court in *Yarger* imposed no temporal limit upon the admissibility of such evidence. *Yarger, supra.*[18] Under *Yarger*, Zugay could have introduced expert testimony to rebut the Commonwealth's *prima facie* case. Since he did not, however, under *Yarger*, as interpreted by our court, the Commonwealth is entitled to a finding that, beyond a reasonable doubt, he drove while having a BAC over 0.10%, even if the sample was taken more than three hours after he last drove.[19]

¶ 29 Finally, our Legislature has also made it clear that such results are admissi-ble. Section 1547 of our Vehicle Code provides in part:

> (c) Test results admissible in evidence.—In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3731 or any other violation of this title arising out of the same action, the amount of alcohol or controlled substance in the defendant's blood, as shown by chemical testing of the person's breath, blood or urine, which tests were conducted by qualified persons using approved equipment, shall be admissible in evidence.

> (d) Presumptions from amount of alcohol.—If chemical testing of a person's breath, blood or urine shows:

> \* \* \*

> (3) That the amount of alcohol by weight in the blood of the person tested is 0.10% or more, this fact may be introduced into evidence if the person is charged with violating section 3731.

75 Pa.C.S. §§ 1547(c), (d)(3).

¶ 30 Therefore, the BAC evidence was admissible against Zugay to prove that he violated both section 3731(a)(1) and section 3731(a)(4) of the Vehicle Code. 75 Pa.C.S. §§ 3731(a)(1), (a)(4). Since there was no abuse of discretion in the trial court's admitting the evidence, there is no merit to Zugay's first issue.

■ ¶ 31 In Zugay's second issue, he asks whether the court improperly admitted into evidence his affirmative answer to the question whether he had been the driver of the vehicle. He claims that, under the *corpus delicti* rule, his statement should not have been admitted prior to the

18. Recently, our supreme court also noted its approval, without reference to temporal limits, of the principle in *Yarger* that blood alcohol evidence is generally admissible and may constitute a *prima facie* case in a prosecution under subsection (a)(4), even without expert testimony and without reference to the since-enacted (a.1), so long as the test reflects a BAC over 0.10%. *McCurdy, supra.*

19. The current state of the law may render 75 Pa.C.S. § 3731(a.1) and its three-hour limitation superfluous, since *Yarger's prima facie* approach extends to cases in which the BAC evidence is obtained more than three hours after driving.

Commonwealth's having established that Zugay had been driving the vehicle.[20] The *corpus delicti* rule, as stated in the seminal case of *Commonwealth v. Ware*, 459 Pa. 334, 365, 329 A.2d 258, 274 (1974), is that "a criminal conviction may not be based on the extra-judicial confession or admission of the defendant unless it is corroborated by independent evidence establishing the *corpus delicti.*" *Id.* The Latin phrase *corpus delicti* means "the body of the crime." *Id.* The purpose behind the rule is the principle that "a criminal conviction may not stand merely on the out[-]of[-]court confession of one accused, and thus a case may not go to the fact[-]finder where independent evidence does not suggest that a crime has occurred." *Commonwealth v. Edwards*, 521 Pa. 134, 144, 555 A.2d 818, 823 (1989); *Commonwealth v. Byrd*, 490 Pa. 544, 556, 417 A.2d 173, 179 (1980); *Commonwealth v. Buck*, 426 Pa.Super. 26, 28–29, 626 A.2d 176, 177 (1993); *Commonwealth v. Forman*, 404 Pa.Super. 376, 379–81, 590 A.2d 1282, 1284 (1991). The rule is rooted in the hesitancy to convict a person of a crime solely on the basis of that person's statements. *Commonwealth v. Turza*, 340 Pa. 128, 134, 16 A.2d 401, 404 (1940); *Forman, supra* at 1284; *Commonwealth v. Sestina*, 376 Pa.Super. 441, 448–50, 546 A.2d 109, 113 (1988).

¶ 32 The *corpus delicti* consists of two elements: the occurrence of a loss or injury, and some person's criminal conduct as the source of that loss or injury. *Ware, supra* at 334, 365, 329 A.2d at 274 (citing 7 Wigmore, Evidence § 2072 at 401 (3d ed.1940)); *Commonwealth v. Hogans*, 400 Pa.Super. 606, 608–10, 584 A.2d 347, 349 (1990) (citing Packel & Poulin, *Pennsylvania Evidence* (1987), § 424, *Corpus Delicti*, pp. 280–281); *Forman, supra* at 1284; *Summ. Pa. Jur.2d*, Criminal Law § 1:3.

¶ 33 The identity of the person responsible for the criminal act is not part of the *corpus delicti. Commonwealth v. Elder*, 305 Pa.Super. 49, 51–53, 451 A.2d 236, 237 (1982). Therefore, Zugay's issue as stated has no merit, for it complains of the Commonwealth's failure to prove his identity, when the Commonwealth had no duty so to prove. Nonetheless, we shall continue our examination to ascertain if the *corpus delicti* rule was properly observed.

¶ 34 The *corpus delicti* rule is two-tiered; it must first be considered as a rule of evidentiary admissibility using a *prima facie* standard, and later, under a beyond a reasonable doubt standard, as one of proof for the fact-finder's consideration at the close of the case. *Commonwealth v. Reyes*, 545 Pa. 374, 681 A.2d 724 (1996). *But see Commonwealth v. Persichini*, 558 Pa. 449, 455–57, 737 A.2d 1208, 1212 (1999) (non-precedential plurality) (opinion in support of affirmance supports changing *Reyes* to allow fact-finder to consider second step using same relaxed, *prima facie* standard as is applied to admissibility). Zugay questions the first, admissibility portion of the rule, which is evaluated under a lower standard than the latter component thereof. *Id.* "Before introducing an extra-judicial admission, the Commonwealth is not required to prove the existence of a crime beyond a reasonable doubt." *Edwards, supra* at 144, 555 A.2d at 823; *see also Byrd, supra* at 556, 417 A.2d at 179; *Forman, supra* at 1285; *Hogans, supra* at 350. Rather, it is enough for the Commonwealth to prove that the injury or loss is more consistent with a crime having been committed than not. *Commonwealth v. McMullen*, 545 Pa. 361, 367, 681 A.2d 717, 720 (1996); *Hogans*, 584 A.2d at 350; *Commonwealth v. Rieland*, 324 Pa.Super. 115, 119–21, 471 A.2d 490, 492 (1984).

---

**20.** Zugay's trial occurred on October 23, 1998. The Pennsylvania Rules of Evidence went into effect on October 1, 1998 and are thus applicable to his case. The comment to Pa.R.E. 402 (all relevant evidence generally admissible) specifically notes that the *corpus delicti* rule was not abrogated by the new Pennsylvania Rules of Evidence.

¶ 35 While the burden of establishing the *corpus delicti* is not equivalent to the Commonwealth's ultimate burden of proof, "the evidence of a *corpus delicti* is insufficient if it is merely equally consistent with non[-]criminal acts as with criminal acts." *Forman*, 590 A.2d at 1285 (citing *Byrd*, 490 Pa. at 556, 417 A.2d at 179); *see also Commonwealth v. Leslie*, 424 Pa. 331, 227 A.2d 900 (1967). Furthermore, it is axiomatic that the *corpus delicti* may be proved by circumstantial evidence. *Forman*, 590 A.2d at 1285; *Hogans*, 584 A.2d at 349; *Commonwealth v. Herman*, 288 Pa.Super. 219, 431 A.2d 1016, 1022 (1981).

¶ 36 Here, the circumstantial evidence, introduced prior to Zugay's statement that he had been the driver of the overturned vehicle, established that on a night without wet, icy, or snowy roads, a vehicle had run off the road at a curve, had gone down an embankment, and had turned over, apparently without the involvement of any other vehicle or obstacle. Trooper Hogan testified that there were no skid marks on the road. It can be reasonably inferred that the driver was driving too fast and failed to brake in time to avoid running off the road. Trooper Hogan testified that driving at an unusually fast speed, difficulty staying in one's lane of traffic, and unusual use of the brakes are signs of drunken driving; we infer that failure to utilize brakes in a timely fashion is often an effect of the delayed reaction time brought on by drunkenness. Trooper Hogan also stated that vehicle accidents are often perpetrated by drunken drivers. The evidence introduced prior to Zugay's statement also indicated that he arrived on the scene and walked toward the troopers, and that he was staggering while doing so. Trooper Hogan testified that staggering is one of the signs of intoxication.

¶ 37 Given this evidence, we find that the admission of Zugay's statement that he had been the driver of the vehicle was proper under the *corpus delicti* rule, for, prior to introducing the statement, the Commonwealth had established that it was more likely than not that a crime, *viz.* drunk driving, had occurred. *Commonwealth v. Friend*, 717 A.2d 568 (Pa.Super.1998); *Hogans*, *supra*. There is no merit to Zugay's second issue.

¶ 38 Zugay's third issue presents a challenge to a discretionary aspect of his sentence. When the discretionary aspects of a judgment of sentence are questioned, an appeal is not guaranteed as of right. *Commonwealth v. Moore*, 420 Pa.Super. 484, 488–90, 617 A.2d 8, 11 (1992). Rather, two criteria must be met before an appeal may be taken. First, the appellant must "set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of the sentence." Pa.R.A.P. 2119(f); *Commonwealth v. Flemings*, 421 Pa.Super. 110, 617 A.2d 749 (1992), *rev'd on other grounds*, 539 Pa. 404, 652 A.2d 1282 (1995). Second, an appeal will only be granted when a "substantial question" has been presented. 42 Pa.C.S.A. § 9781(b); *Flemings*, 617 A.2d at 754; *Moore*, 617 A.2d at 11. An appellate court will find a "substantial question" and review the decision of the trial court only where an aggrieved party can articulate clear reasons why the sentence imposed by the trial court compromises the sentencing scheme as a whole. *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987). *See also Commonwealth v. Jones*, 418 Pa.Super. 93, 99–101, 613 A.2d 587, 590 (1992) (superior court will grant an appeal only when the appellant shows that the trial judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process).

¶ 39 Although Zugay has recognized the above-recited standards in his brief, he has not included a concise statement of reasons as per Pa.R.A.P. 2119(f), and the Commonwealth has objected to his lack thereof. Where appellant has failed

to include in his appellate brief a Pa.R.A.P. 2119(f) statement as per *Tuladziecki, supra*, and the Commonwealth has objected to this deficiency, this court will find the sentencing claim waived. *Commonwealth v. Krum*, 367 Pa.Super. 511, 533 A.2d 134 (1987) (*en banc*). Accordingly, we find Zugay's third issue waived.

¶ 40 Judgment of sentence affirmed.