J-S22011-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GEORGE RANDALL ADAMS | : | |
| | : | |
| Appellant | : | No. 1199 WDA 2022 |

Appeal from the Judgment of Sentence Entered September 6, 2022
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0001716-2021

BEFORE:  OLSON, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY OLSON, J.:                    **FILED:  August 25, 2023**

Appellant, George Randall Adams, appeals from the judgment of sentence entered September 6, 2022, as made final by the denial of his post-sentence motion on October 11, 2022.  We affirm.

On June 15, 2022, Appellant was charged *via* an amended criminal information with four counts of arson; two counts of aggravated assault; risking catastrophe; criminal mischief; and recklessly endangering another person ("REAP").  The charges related to a fire set in Appellant's home along East Lake Road in Erie, Pennsylvania on June 12, 2021.  Appellant's jury trial commenced June 21, 2022.  The jury ultimately found Appellant not guilty of aggravated assault, but guilty of arson – danger of death or bodily injury; arson – intent to destroy unoccupied building, two counts of arson – bodily

injury; risking catastrophe; criminal mischief; and REAP.[1]  On September 6, 2022, the trial court sentenced Appellant to "an aggregate period of 84 to 168 month[s'] incarceration[,] followed by one year of reentry supervision and restitution of $86,849.34." Trial Court Opinion, 11/1/21, at 1.  Appellant filed a post-sentence motion on September 12, 2022, which the trial court denied on October 11, 2022.  This timely appeal followed.

Appellant raises the following issues on appeal:

1. Did the Commonwealth present insufficient evidence to sustain [Appellant's] conviction for risking a catastrophe where the fire involved a single residence and did not expose society to "an extraordinary disaster?"

2. Did the trial court err by permitting the Commonwealth to introduce Appellant's text messages at trial before establishing *corpus delicti*, namely, that the fire was incendiary in origin?

Appellant's Brief at 8 (superfluous capitalization omitted).

Appellant's first issue challenges the sufficiency of the evidence supporting his conviction for risking catastrophe.  Appellant's Brief at 27-33.

It is well-settled that

[t]he standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact[-]finder to find every element of the crime beyond a reasonable doubt.  In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder.  In addition, we note that the facts and circumstances established by the Commonwealth may not

_____

[1] 18 Pa.C.S.A. §§ 3301(a)(1); 3301(a.1)(1); 3301(c)(1); 3302(b); 3304(a)(1); and 2705, respectively.

preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Lambert*, 795 A.2d 1010, 1014–1015 (Pa. Super. 2002) (citations omitted).

Section 3302 of the Crimes Code provides in relevant part:

**§ 3302. Causing or risking catastrophe**

**(a) Causing catastrophe.**—A person who causes a catastrophe by explosion, fire, flood, avalanche, collapse of building, release of poison gas, radioactive material or other harmful or destructive force or substance, or by any other means of causing potentially wide spread injury or damage ... commits a felony of the first degree if he does so intentionally or knowingly, or a felony of the second degree if he does so recklessly.

**(b) Risking catastrophe.** —A person is guilty of a felony of the third degree if he recklessly creates a risk of catastrophe in the employment of fire, explosives or other dangerous means listed in subsection (a) of this section.

18 Pa.C.S.A. § 3302.

Our Supreme Court previously distinguished the two sections of this statute as follows:

Section 3302 attempts to meet two separate and distinct societal harms. In paragraph (a) it purports to punish for the damage caused by the mishandling of certain enumerated

highly dangerous forces or substances. Paragraph (b) addresses the exposure to harm created by the misuse of these forces or substances.

*Commonwealth v. Hughes*, 364 A.2d 306, 309 (Pa. 1976) (emphasis and footnotes omitted). Importantly, "[t]he fact that swift and effective governmental intervention limited the deleterious effect of [the defendants'] reckless conduct does not decriminalize their actions. The fact that an actual devastating catastrophe was averted is of no moment in assessing [the defendants'] conduct in terms of Section 3302(b)." *Commonwealth v. Scatena*, 498 A.2d 1314, 1317 (Pa. 1985).

Herein, Appellant argues that the Commonwealth failed to present sufficient evidence to sustain his conviction for risking catastrophe. Appellant's Brief at 27. Appellant points out that the fire only involved his home and claims that the Commonwealth did not present testimony or evidence indicating "the circumstances of this fire created a risk of extraordinary disaster, widespread injury and damage, or calamity." *Id.* at 26-27. We disagree.

In contrast to Appellant's claims, the Commonwealth presented testimony and evidence demonstrating the severity of the fire, as well as the chaotic scene that ensued in response. Indeed, the following exchange occurred during the direct examination of Appellant's neighbor, John Knox:

Q. And while the fire was taking place, did you see any flames or anything else penetrate to outside of the home?

A. Oh, heck yeah.

Q. Can you describe it a little[?]

- 4 -

A.  So out of the back of the house, there was – there was a set of, like, patio doors on the back, and they must have cracked out – they must have cracked out about the time that – when I came to the front garage, because that [is] where the majority of the smoke and stuff was coming from.  Like I said, there were flames in the stairwell when I went by, and then when I went around to the other side of the house, there were flames coming out of the windows on the other side.

N.T. Trial, 6/21/22, at 88.  Another neighbor, Kerry Harris, echoed Knox's description of the scene, stating that the fire looked like a "flamethrower" because it was "blowing . . . straightforward out of the side of the home." ***Id.*** N.T. Trial, 6/22/22, at 64.  Harris also testified that "big burst[s] of flames [were] coming out of the [house's] window . . . the likes [of which he had] never seen." ***Id.*** at 70.  In addition, both Knox and Harris explained that, in disregard of their own safety, they helped Appellant escape from the second-floor of the house after they saw him pleading for help through the flame-engulfed window. ***See*** N.T Trial, 6/21/22, at 86 (Knox testifying that he "ran back around to [his] garage and got [his] ladder, brought the ladder down, put the ladder up" to help Appellant out of the second-floor window while "the place was pouring smoke and flames"); ***see also id.*** N.T. Trial, 6/22/22, at 64 (Harris testifying that neighbors helped Appellant out of the second-floor window).  Moreover, the Commonwealth presented testimony demonstrating that two firefighters, Corey Delio and David Nye, sustained injuries due to the fire, requiring hospitalization. ***Id.*** at 47; ***see also*** N.T. Trial, 6/22/22 at 14.  Finally, Appellant's next-door neighbor, Stacy Sharples, testified that, as a result of the fire, "three windows on the west side of [her]

house. . . were all damaged by the heat," totaling $10,779.38. N.T. Trial, 6/21/22 at 64-65. Based upon the foregoing, we conclude that the Commonwealth presented sufficient evidence to sustain Appellant's conviction for risking catastrophe.

In his second appellate issue, Appellant argues that the Commonwealth failed to establish that the fire was of incendiary origin and, as such, the *corpus delicti* of arson by a preponderance of the evidence. Appellant's Brief at 35. Thus, Appellant claims that the trial court abused its discretion by permitting the Commonwealth to introduce evidence of Appellant's text messages during trial, wherein he made the following statement to his wife: "answer me or after I [am] done I [am] just going to torch the fucking house." N.T. Trial, 6/22/22, at 37; **see also** Appellant's Brief at 35. We disagree.

This Court previously explained:

> The *corpus delicti* rule is an evidentiary one. On a challenge to a trial court's evidentiary ruling, our standard of review is one of deference.
>
> The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

**Commonwealth v. Hernandez**, 39 A.3d 406, 411 (Pa. Super. 2012) (citation omitted).

- 6 -

The term *corpus delicti* is Latin for "body of the crime." ***Commonwealth v. Zugay***, 745 A.2d 639, 653 (Pa. Super. 2000). "The well-established *corpus delicti* rule provides that 'a criminal conviction may not stand merely on the out-of-court confession of one accused, and thus a case may not go to the fact-finder where independent evidence does not suggest that a crime has occurred.'" ***Commonwealth v. Cuevas***, 61 A.3d 292, 295 (Pa. Super. 2013) (citation omitted). "This may be proved by circumstantial evidence." ***Zugay***, 745 A.2d at 753.

> The crucial determination in applying the *corpus delicti* rule is whether, at the close of the case, the proof of the *corpus delicti* was sufficient to permit the fact[-]finder to consider defendant's admission or confession.

***Commonwealth v. Hogans***, 584 A.2d 347, 349 (Pa. Super. 1990) (citations omitted) (emphasis added). "The *corpus delicti* rule is two-tiered; it must first be considered as a rule of evidentiary admissibility using a *prima facie* standard, and later, under a beyond a reasonable doubt standard, as one of proof for the fact-finder's consideration at the close of the case." ***Cuevas***, 61 A.3d at 295. In the context of arson-related offenses, *corpus delicti* is established if the Commonwealth demonstrates "(1) that a fire occurred[] and (2) that it had an incendiary origin." ***Commonwealth v. Moyer***, 419 A.2d 717, 718 (Pa. Super. 1980) (citations omitted).

Appellant does not dispute that his home burned, ***see*** Appellant's Brief at 35, and our review of the trial testimony confirms that, before Appellant's text messages were admitted into evidence, the Commonwealth established

the incendiary nature of the fire by a preponderance of the evidence. Thus, the trial court did not abuse its discretion in permitting the Commonwealth to introduce evidence of Appellant's text messages.

The relevant testimony which established *prima facie* evidence of the incendiary nature of the fire was offered by the Commonwealth's witness, Donald Sauer, who testified as an expert in the field of fire investigation. N.T. Trial, 6/21/22, at 96. In particular, Sauer testified that he classified the fire in this case as "[i]ncendiary" and then proceeded to set forth the basis for his opinion as follows. **Id.** at 102. First, Sauer explained that there were "indications that led [them] to believe [the fire] was incendiary," including Appellant's "text messages . . . to his family members;" the fact that Appellant "took property from the scene and put it in the [detached] garage so it would [not] be damaged in the fire;" and a statement by Appellant's neighbor, Sharples, indicating that she saw Appellant carry propane torches into his home prior to the fire. **Id.** at 102-103; **see also id.** at 57 (Sharples testifying that she saw Appellant "walk [] right to the house" from his garage "with two or three propane tanks"). Sauers, however, did not detail the contents of Appellant's text messages. Second, Sauer stated that all other possibilities of origin, including electrical, gas, or natural sources, were "rule[d] out when [they] investigat[ed the] fire." **Id.** at 103-104; **see also id.** at 121-122 and 125-126. Lastly, Sauer explained that, based upon the observed level of fire damage, he determined that the living/dining room was the "room of origin," *i.e.*, the area of the home where the fire started and that, in the living/dining

room, they found a propane torch. **Id**. at 107-111. Sauer also stated they discovered another propane torch, as well as a lighter, in the second-floor room where Appellant was eventually rescued. *Id.* at 115-117. Based upon the foregoing, Sauer opined that the fire started in the dining/living room *via* an open flame by way of a propane torch. *Id.* at 126.

Hence, contrary to Appellant's claims, the Commonwealth demonstrated that, before the fire, a neighbor witnessed Appellant take propane torches into his home. In addition, Sauer opined that an incendiary origin was the only possible explanation for the fire, as all other causes were ruled out. Moreover, Sauer specifically testified that the fire was caused by an open flame, using a propane torch, two of which were found in Appellant's home. We agree with the trial court, which found at the conclusion of Sauer's testimony that the Commonwealth established a *corpus delicti* by the preponderance of the evidence. We therefore conclude that Appellant's claim of error lacks merit.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  8/25/2023

- 9 -