617 A.2d 749

**COMMONWEALTH of Pennsylvania**

v.

**Dana Maurice FLEMINGS, Appellant. (Three Cases)**

Superior Court of Pennsylvania.

Submitted June 16, 1992.

Filed Dec. 2, 1992.

Joseph P. Burt, Erie, for appellant.

William R. Cunningham, Dist. Atty., Erie, for Com., appellee.

Before WIEAND, DEL SOLE and HESTER, JJ.

HESTER, Judge:

This is a consolidated appeal by Dana Flemings from two judgments of sentence.[1] As we conclude that the jury should have been instructed that in order to be convicted of aggravated assault of a police officer, appellant must have had knowledge that the victim was a police officer, we reverse and remand for a new trial at appeal number 1540 Pittsburgh 1991. We deny allowance of appeal from the discretionary aspects of sentencing and affirm the judgment of sentence at appeal number 1541 Pittsburgh 1991.

The relevant procedural history regarding appeal number 1540 Pittsburgh 1991 is as follows. On October 15, 1990, appellant was charged with one count each of conspiracy, possession of a controlled substance with intent to deliver, theft, resisting arrest, and possession of a firearm without a license. He also was charged with two counts of aggravated assault and three counts of reckless endangerment. These charges stem from an incident occurring on October 11, 1990, at approximately 5:00 p.m. He was convicted by a jury on July 11, 1991, of all counts except resisting arrest. On August 12, 1991, he was sentenced on those charges. The appeal at 1540 Pittsburgh 1991 followed. As to that appeal, appellant

---

1. Appellant also filed a notice of appeal from an order partially denying his motion to modify his sentence. This appeal is docketed at number 1600 Pittsburgh 1991. As appellant filed a proper appeal from the judgment of sentence, that appeal was not necessary and will be dismissed.

raises three issues relating to jury selection, an issue regarding the propriety of jury instructions, a sentencing contention, and an argument that there was insufficient evidence to support one of his convictions for reckless endangerment. The issues relating to jury selection and sentencing are rendered moot by our decision allowing a new trial based upon erroneous jury instructions; however, we will address the sufficiency of the evidence argument as appellant would be entitled to a vacation of that conviction if his argument were meritorious.

The following procedural facts relate to appeal number 1541 Pittsburgh 1991. On December 12, 1990, appellant was charged with conspiracy, possession of a controlled substance, and delivery of a non-controlled substance. On September 14, 1990, at 11:40 p.m., appellant, with the help of Edith Henderson, sold a quantity of white powder to an undercover officer and told the officer that it was cocaine. On July 11, 1991, the same day he was convicted at the jury trial on the previously-described charges, he pled guilty to all charges stemming from the September 14, 1990 incident. He was sentenced on August 12, 1991, to thirty to seventy two months imprisonment on those charges. The appeal at number 1541 Pittsburgh 1991 followed. This appeal was consolidated with the appeal at number 1540 Pittsburgh 1991. Appellant raises a sentencing claim that relates both to the sentence imposed at this appeal number and the previous appeal number. We will consider appellant's sentencing claims insofar as they relate to the sentence at number 1541 Pittsburgh 1991. We affirm that judgment of sentence.

We first address the issues raised in appeal number 1540 Pittsburgh 1991. The trial evidence reveals the following. The Commonwealth presented two witnesses, Erie Police Detectives Edward L. Mioduszewski and Edward Yeaney. On October 11, 1990, the officers were working undercover as drug dealers. At approximately 5:00 p.m., Detective Mioduszewski parked their undercover vehicle, a Chrysler LeBaron, on Thirteenth Street in Erie. Appellant walked up from behind the vehicle, went past it, turned around, and stopped

next to Officer Mioduszeski's open window. Appellant asked Officer Mioduszewski if he was looking for somebody. The officer replied that he was looking for someone who was "holding." Notes of Testimony, 7/11/91, at 27. In street parlance, appellant's question was asking the officer whether he wanted to buy drugs and the officer's response meant that he was looking for cocaine.

Appellant looked inside the vehicle and said that he would return quickly and not to leave. He walked around the corner by himself and several minutes later, he returned with a female, who was known to both officers as Tisa Howard. Tisa walked over to the passenger side of the vehicle, and appellant walked over to the driver's side. Tisa began to converse with Officer Yeaney about the quantity of cocaine that they wanted to purchase. They were attempting to buy one-half gram of cocaine, which costs about forty dollars.

Tisa asked appellant if the detectives were "all right." *Id.* at 30. Appellant responded that he knew Detective Yeaney and he was not a police officer. While Tisa and Detective Yeaney were conversing, appellant was speaking with Officer Mioduszewski and asked "if he could get $10 for setting this deal up. And [Officer Mioduszewski] said, 'Well, then this is going to cost me $50, right?' At that time, [appellant] said, 'Yes'. . . ." *Id.* at 29.

Tisa objected because she was the one who had the drugs, and she insisted that Officer Mioduszewski speak with her. She then handed Detective Yeaney a packet of cocaine. He protested that it was too light, which meant that it did not contain the proper quantity of cocaine. Officer Mioduszewski started to lean over toward Tisa with the money to exchange for the drugs. As Officer Mioduszewski leaned over toward the passenger side of the vehicle, he exposed his pistol, a Smith and Wesson, model 59. It was his personal pistol and not a police department weapon. The pistol had been located under the officer's leg and was not in a holster. The gun was loaded, and the safety latch was not activated. When Officer Mioduszewski turned back to face appellant, appellant was pointing the gun directly at him.

The trial transcript indicates that the following people were in the line of fire:

Q. Now, the way he had the gun pointed who would have been in the line of fire?

A. Myself, and seeing as I was starting to slouch down in the seat, Detective Yeaney and anybody who would have been on the other side of Detective Yeaney.

Q. Was anybody on the other side of Detective Yeaney?

A. Tisa Howard was still there. They were unaware of what was happening at that time.

*Id.* at 33.

Detective Yeaney testified similarly, stating that both he and Tisa Howard were in the line of fire of the gun when appellant was pointing it at them. *Id.* at 79. Appellant then backed up while still pointing the gun toward Detective Mioduszewski and the others. When he reached the corner of Thirteenth and Parade Street, appellant placed the gun down his pants, turned and ran on Parade Street. The officers chased appellant in their vehicle. The officers temporarily lost sight of appellant but then observed him exiting a house. Detective Mioduszewski testified that at that point:

[Appellant] saw us pull up right in front of the house. He stopped on the porch, and at that time he stated, "Officers, I'll give you back your gun."

Q. Did he use the plural?

A. I believe he said officers. I could be wrong. It could have been officer, but at that time I thought it was officers.

Q. Up until the time of that statement had you identified yourself as the police in any way?

A. No, I did not.

*Id.* at 36. The officers pulled into the driveway of the house. Appellant re-entered it, exited it again, threw the pistol down onto the porch, and ran back into the house, closing the door. The officers ran into the house, which was full of people trying to leave by the windows. Officer Mioduszewski grabbed appellant as he attempted to flee. The two struggled briefly, but the officers together managed to subdue and arrest him.

The packet that police retrieved from Tisa was analyzed and contained cocaine. Appellant is not licensed to carry a gun.

On cross-examination, appellant established the following. At the time of the incident, Officer Mioduszewski was wearing blue jeans, sneakers, and a T-shirt or casual top and his hair was long and pulled into a pony tail. He admitted that his entire appearance and manner of speaking on the night in question was arranged to give the impression that he was a drug purchaser. Officer Yeaney was attired similarly. In fact, their disguises were so effective that Tisa, a prostitute whom both officers had arrested prior to the incident, did not recognize them as police.

Appellant admitted that the events transpired. He then explained why he pointed the gun at the detectives.

A. So then Mr. Yeaney—Tisa gave Detective Yeaney the cocaine and he tasted it. And so Ed Mioduszewski went to hand Tisa the money and I saw a firearm and I got really scared, so I snatched it. I wasn't trying to hurt no one; I was just scared.

. . . .

Q. At any time up until the time, Mr. Flemings, that you took the firearm, did either of the people say that they were police officers?

A. No, they didn't.

Q. What did you do after you got to the house on 15th Street?

A. The people who was inside the house, they was with me before all this happened. They was with me, so I was telling them that two white men, they had guns, and I snatched one because I thought I was going to get hurt because of the cocaine. I thought they was going to rob me or something. I was just scared. So we was talking about that and they was telling me to take it back to them. So when I was going out the door they was right there.

Q. Who was?

A. Detective Yeaney and Ed Mioduszewski.

A. What did you do?

A. I said, "Here's your gun, sir." And I shot it to them. *Id.* at 111. Appellant testified that at that time, he still did not know that the two men were police officers and disputed the officers' claim that he addressed them as "officer" rather than "sir."

 Appellant contends that the trial court erroneously refused his request that the jury be instructed that he could not be found guilty of aggravated assault on a police officer unless he knew that the victim was a police officer. We agree with this contention and reverse and remand for a new trial on the charges at number 1541 Pittsburgh 1991.

There are five types of aggravated assault. When the victim is an ordinary citizen, one commits aggravated assault either where "serious" bodily injury is attempted or occurs or where "bodily injury" is attempted or occurs through the use of a deadly weapon. 18 Pa.C.S. § 2702(a)(1), (4). The legislature has determined, however, that where the victim is a police officer, or falls within other defined categories of public servant, performing their official duties when attacked, a defendant commits aggravated assault if any type of "bodily injury" is attempted or results, even non serious injury. Thus, more serious consequences in terms of sentencing flow to a defendant for an attack on a police officer performing his duties.

Appellant was charged and tried for attempted aggravated assault based only upon the application of subsection (a)(3) of section 2702, which provides that one commits aggravated assault if one intentionally attempts to cause bodily injury, *inter alia,* to a police officer in the performance of his duties. Attempted aggravated assault is a specific intent crime. *Commonwealth v. Magnelli,* 348 Pa.Super. 345, 502 A.2d 241 (1985).

At the close of the evidence, appellant requested that the jury be instructed that in order to find appellant guilty of aggravated assault on a police officer, appellant must have known that the undercover officers were police when he pointed the weapon at them. The trial court denied this

request based on its perception that the fact the victims were police officers is not an element of the crime under subsection (a)(3) of section 2702 and that one can be guilty under that section even without the knowledge that the victim was a police officer. We disagree.

Normally, a defendant may be convicted only of simple assault if his intent is to cause bodily injury to his victim. 18 Pa.C.S. § 2701. Where, however, the victim fits within several, special categories, the legislature has mandated that more serious consequences flow from the same type of conduct. Thus, intent to cause any type of bodily injury to a police officer becomes aggravated assault. The fact that the victim is a police officer must be viewed as an element of the crime since the victim's status is delineated specifically as an element in the statute defining the crime and since this fact transposes the same criminal conduct from a misdemeanor to a felony.

In the present case, the inequity of not allowing the jury to decide that issue is clear. In the midst of deliberations, the jury submitted two questions to the trial court. First, "Is it aggravated assault or is it aggravated assault of a police officer?" N.T., 7/11/91, at 160. Second, "Did the defendant have to know if they were police officers at the time of the assault?" *Id.* The trial court responded that it was not necessary that the defendant know they were police.

In light of these questions, it is obvious that the jury was considering absolving appellant of aggravated assault on police officers due to the officers' appearances, their failure to identify themselves prior to the incident, and appellant's professed lack of knowledge as to their status. The jury apparently was convinced by appellant's description of events as a drug deal gone bad. It may have been hesitating to impose criminal culpability on appellant for his actions in attempting to remove himself from a situation where he thought that he was in danger from armed drug dealers angry over the weight of their drug purchase. They also may have been crediting appellant's testimony that he did not intend to harm anyone— just to remove himself from the situation.

When one, with knowledge of the victim's status directs certain conduct at a police officer, we, as a society, justly punish that conduct more severely for the protection of the police. However, when the evidence establishes that a defendant did not know of the status of his victim, it is unfair fundamentally to impose more serious consequences to actions which may have been viewed as justified by the factfinder if such actions were directed against an ordinary citizen. If appellant's testimony is credited, he was in fear and thought he was pointing a gun at drug dealers to escape. This determination was taken by the jury when the trial court instructed that appellant did not have to know that his victims were officers in order to be convicted of aggravated assault of a police officer in the performance of his duties. Meanwhile, the victim's status is outlined as an element of the crime in the statute. When the facts call into question whether the defendant knew his victim was a police officer, the jury must be instructed to decide whether the defendant had the requisite knowledge to convict based on the evidence presented.

In this connection, we note our disagreement with the Commonwealth's contention that our decision herein creates two classes of officers, those in uniform who are protected and those who are not protected because they are working undercover. An undercover officer has only to identify himself as a police officer to be protected under section 2702(a)(3). Presumably, this ordinarily will occur prior to any assaultive or dangerous behavior by a defendant during an undercover operation. The events herein were the result of Officer Mioduszewski's inadvertent exposure of his personal weapon. If appellant's actions had occurred after the officers identified themselves, the jury would not have grappled with this issue.

We next address appellant's contention that there was insufficient evidence to support his conviction of reckless endangerment as to Ms. Howard. He notes that she did not testify and argues that the officers' testimony that she was in the line of fire cannot be credited since it is obvious that they were looking at him and the gun at that time. Appellant argues that in light of these facts, there was not a sufficient

basis from which the jury could find that Tisa Howard was in the line of fire based on the evidence produced. We begin with the familiar admonition that our standard of review for challenges to the sufficiency of evidence is limited.

In evaluating this contention *i.e.* the defendant's challenge to the sufficiency of the evidence, we must view the evidence in the light most favorable to the Commonwealth and, drawing all reasonable inferences therefrom favorable to the Commonwealth, determine if there is sufficient evidence to enable the trier of fact to find every element of the crime beyond a reasonable doubt.

*Commonwealth v. Schwartz,* 419 Pa.Super. 251, ——, 615 A.2d 350, 360 (1992) quoting *Commonwealth v. Carbone,* 524 Pa. 551, 553–4, 574 A.2d 584, 585 (1990). It is within the province of the fact finder to determine the weight to be given to each witness's testimony and to believe all, part, or none of the evidence. *Commonwealth v. Parker,* 387 Pa.Super. 415, 564 A.2d 246 (1989). In the present case, the jury credited the officers' testimony that Tisa was in the line of fire from the weapon. We may not disturb this credibility determination. *Commonwealth v. Jackson,* 506 Pa. 469, 472–73, 485 A.2d 1102, 1103 (1984); *accord Commonwealth v. Zankowski,* 377 Pa.Super. 256, 546 A.2d 1254 (1988). If the officers' testimony is credited, appellant's conviction is not infirm.

■ Appellant challenges the sentence imposed at number 1541 Pittsburgh 1991. His contention is that the sentence, while in the standard range, was excessive in that the sentencing court did not adequately consider his rehabilitative needs. This is a challenge to the discretionary aspects of his sentence. Pa.R.A.P. 2119(f) and *Commonwealth v. Tuladziecki,* 513 Pa. 508, 522 A.2d 17 (1987), require appellant to include in his brief a separate statement of reasons relied upon for this appeal. Appellant has not complied with that requirement.

However, the Commonwealth has failed to object to the lack of a statement itself and has contended that the allegations do not raise a substantial question as to the appropriateness of his sentence. Despite the absence of a separate statement, we have decided to exercise our discretion and proceed to consid-

er whether appellant's sentencing allegations raises a substantial question as to the appropriateness of his sentence. *Commonwealth v. Zelinksi*, 392 Pa.Super. 489, 573 A.2d 569 (1990) (where Commonwealth does not object to lack of a statement, we may, in our discretion consider whether sentencing issue raises a substantial question); *Commonwealth v. Krum*, 367 Pa.Super. 511, 533 A.2d 134 (1987) (same).

We agree with the Commonwealth's contention that appellant's allegation as to his sentence does not raise a substantial question and deny allowance of appeal from the discretionary aspects of his sentence. In *Commonwealth v. Jones*, 418 Pa.Super. 93, 613 A.2d 587 (1992), we held that a contention that a sentence is excessive due to the weight the sentencing court gave to the various sentencing factors does not raise a substantial question. *See also Commonwealth v. Mobley*, 399 Pa.Super. 108, 581 A.2d 949 (1990) (where sentence is within statutory limit, claim that it is excessive does not raise a substantial question); *Commonwealth v. Smith*, 394 Pa.Super. 164, 575 A.2d 150 (1990) (challenge to weight given sentencing factors does not raise substantial question); *Commonwealth v. Quartapella*, 372 Pa.Super. 400, 539 A.2d 855 (1988) (same).

Appeal number 1600 Pittsburgh 1991 is dismissed. Judgment of sentence at number 1541 Pittsburgh 1991 affirmed. Judgment of sentence at number 1540 reversed and case remanded for a new trial. Jurisdiction relinquished.

DEL SOLE, J., files a concurring statement.

DEL SOLE, Judge, concurring.

I join the Majority's disposition of the appeals at Nos. 1540 & 1600 Pittsburgh 1991. However, on No. 1541 Pittsburgh 1991, I would permit review of the sentence and affirm.