652 A.2d 1282

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Dana Maurice FLEMINGS, Appellee.**

Supreme Court of Pennsylvania.

Submitted Sept. 23, 1993.

Decided Jan. 20, 1995.

William R. Cunningham, Dist. Atty., Erie, for appellant.

Joseph P. Burt, Asst. Public Defender, Erie, for appellee.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

Appellee was found guilty by a jury of one count each of conspiracy, possession of a controlled substance with intent to deliver, theft, possession of a firearm without a license and two counts each of aggravated assault and three counts of reckless endangerment. These convictions arose from events occurring on October 11, 1990. On appeal, the Superior Court reversed and remanded for a new trial, 421 Pa.Super. 110, 617 A.2d 749. The Superior Court majority determined that the

jury should have been instructed that knowledge by the Appellee that the two victims of the assault were police officers was an essential element of the crime of aggravated assault under 18 Pa.C.S. § 2702(a)(3).[1]

The facts underlying Appellee's conviction by the jury in the instant case are as follows. On October 11, 1990, two members of the vice squad of the Erie Police Department were working undercover as drug purchasers. Appellee approached the vehicle in which the two officers were seated and essentially offered to sell them cocaine. Appellee left and returned a short time later accompanied by one Tisa Howard. Ms. Howard approached the passenger side of the vehicle where she conversed with Officer Yeaney. Meanwhile, Appellee approached the driver's side where he conversed with Officer Mioduszewski. As Officer Mioduszewski leaned toward the passenger window to consummate a drug transaction with Ms. Howard, his Smith and Wesson pistol was exposed to Appellee who then stole the pistol; and as Officer Mioduszewski turned around, Appellee had the gun pointed directly at him, as well as in the direction of Officer Yeaney and Ms. Howard. Appellee slowly backed off while pointing the gun at the officers. He then fled on foot. The officers gave chase and eventually caught Appellee exiting a nearby house. Prior to catching him, Appellee had stated, "Officers, I'll give you back your gun." Prior to that statement, the officers had not identified themselves as such. Appellee admitted that most of those events occurred, but testified that he did not know that Yeaney or Mioduszewski were police officers, but when he saw the firearm, he became frightened and took it so that no one would get injured. (N.T., 7/11/91, at 111.)

As noted, the jury convicted Appellee of the numerous charges, including two counts of aggravated assault. At the completion of the trial, Appellee requested that the jury be

1. We note that the instant appeal to the Superior Court was originally part of a consolidated appeal of three separate docket numbers from the trial court. The Superior Court affirmed Appellee's convictions at 1541 Pittsburgh 1991 and dismissed his appeal at 1600 Pittsburgh 1991. The Commonwealth's appeal to this Court arises from the Superior Court reversal and remand at 1540 Pittsburgh 1991.

instructed that Appellee must have known that the undercover officers were police officers when he pointed the gun at them in order to be found guilty of aggravated assault on a police officer. The trial court refused this requested instruction concluding that knowledge of the fact that the victims were police officers is not an element of the crime under 18 P.S. § 2702(a)(3). During the course of their deliberations, the jury asked the trial court whether Appellee had to know whether the victims were police officers at the time of the assault. The trial court answered that it was not necessary that Appellee know they were police.

On appeal, the Superior Court reversed and remanded for a new trial holding that knowledge by Appellee that the victims were police officers was an element of the crime and must be proven.[2] The Superior Court reasoned as follows:

18 P.S. § 2702(a)(3) provides:

(a) Offense defined.—A person is guilty of aggravated assault if he: ...

(3) attempts to cause or intentionally or knowingly causes bodily injury to a police officer ... in the performance of duty; ...

The Superior Court first noted that attempted aggravated assault is a specific intent crime. *Commonwealth v. Magnelli*, 348 Pa.Superior Ct. 345, 502 A.2d 241 (1985). In the ordinary case, a defendant would only be convicted of simple assault if the intent was to cause bodily injury to a victim. See, 18 P.S. § 2701. However, when the victim comes under one of several special categories, the legislature has mandated that more serious consequences flow from the same type of conduct, that is, the conduct becomes one of aggravated assault. See, 18 P.S. § 2702. Thus, intent to cause bodily injury to a police officer becomes aggravated assault under 18 P.S. § 2701(a)(3). The Superior Court then concluded that the fact that the

---

**2.** The Superior Court declined to address Appellee's three arguments related to jury selection, and a sentencing contention, in light of their remand for a new trial. However, the Superior Court did address one additional contention raised by Appellee, and they ruled that as to one of the reckless endangerment charges, there was sufficient evidence to support the conviction.

victim is a police officer must be viewed as an element of the crime since the victim's status is specifically set forth as an element in the statute defining the crime, and since this fact transposes the same act of criminal conduct from a misdemeanor into a felony.

> When one, with knowledge of the victim's status directs certain conduct at a police officer, we, as a society, justly punish that conduct more severely for the protection of the police. However, when the evidence establishes that a defendant did not know of the status of his victim, it is unfair fundamentally to impose more serious consequences to actions which may have been viewed as justified by the factfinder if such actions were directed against an ordinary citizen.

*Commonwealth v. Flemings*, 421 Pa.Superior Ct. at 119, 617 A.2d at 753.

We disagree with this analysis and, for the reasons set forth below, reverse. Admittedly, this case raises an issue of first impression in Pennsylvania that as a matter of pure verbal logic could go either way. We are guided, however, by the United States Supreme Court's decision in *United States v. Feola*, 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975), where the court concluded, with respect to a comparable federal statute, that knowledge that a victim is a federal officer is not an element of the crime of assaulting a federal officer.

> Prior to 1988, 18 U.S.C. § 111 provided, in part, as follows: Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title [that is, any federal officer] while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both.... [3]

In *Feola*, the United States Supreme Court specifically held, by a 7 to 2 majority authored by Mr. Justice Blackmun,

---

3. The statute's coverage has since been expanded to protect *former* federal officers, as well. Clearly, *former* federal police officers would not usually be in uniform or easily identified when and if assaulted.

that criminal liability for the offense of assaulting a federal officer under 18 U.S.C. § 111 does not depend on whether or not the assailant harbored the specific intent to assault a federal officer. While conceding that either this conclusion, or its opposite, was "plausible" as a matter of determining legislative intent, the court concluded that Congress intended to protect federal officers, as well as federal functions, and that the rejection of a strict scienter requirement was consistent with both purposes. 420 U.S. at 679, 95 S.Ct. at 1261.

Mr. Justice Blackmun went on to reason for the majority as follows:

> We conclude, from all this, that in order to effectuate the congressional purpose of according maximum protection to federal officers by making prosecution for assaults upon them cognizable in the federal courts, § 111 cannot be construed as embodying an unexpressed requirement that an assailant be aware that his victim is a federal officer. All the statute requires is an intent to assault, not an intent to assault a federal officer. A contrary conclusion would give insufficient protection to the agent enforcing an unpopular law, and none to the agent active under cover.

> This interpretation poses no risk of unfairness to defendants. It is no snare for the unsuspecting. Although the perpetrator of a narcotics "rip-off," such as the one involved here, may be surprised to find that his intended victim is a federal officer in civilian apparel, he nevertheless knows from the very outset that his planned course of conduct is wrongful. The situation is not one where legitimate conduct becomes unlawful solely because of the identity of the individual or agency affected. In a case of this kind the offender takes his victim as he finds him. . . .

420 U.S. at 684–685, 95 S.Ct. at 1264 (footnote omitted).

Mr. Justice Blackmun's reasoning is equally applicable to the case at bar and our aggravated assault statute.

The liability imposed by 18 Pa.C.S. § 2702(a)(3) is not absolute, since to be convicted of aggravated assault under that section, the defendant must be shown to have possessed a

criminal *mens rea*, *i.e.*, the intent to cause bodily injury. Thus, the defendant's ignorance of an officer's official status is relevant in those rare cases in which an officer fails to identify himself and then engages in a course of conduct which could reasonably be interpreted as the unlawful use of force directed either at the defendant or his property. Under such circumstances, a defendant would normally be justified in using reasonable force against his assailant. He could then be found to have exercised self defense, which would negate the existence of mens rea. *See United States v. Feola*, 420 U.S. 671, 686, 95 S.Ct. 1255, 1264–65, 43 L.Ed.2d 541.

The same principle does not apply, however, where a defendant clearly intends to commit a crime and unwittingly chooses a police officer as his victim. Such a scenario scarcely argues the existence of an "honest mistake." Rather, under these circumstances the defendant's ignorance of the victim's official status is irrelevant since he knows from the outset that his planned course of conduct is unlawful. Once he chooses to engage in such conduct, he takes his victim as he finds him. *Feola* at 685, 95 S.Ct. at 1264; *United States v. Young*, 464 F.2d 160, 163 (5th Cir.1972).

Similarly, the statute's requirement that the officer be "in the performance of duty" in no way implies that liability depends on whether the defendant is aware of his victim's official status. The duties of a police officer, like the officers in the instant case, frequently include undercover investigation in which the officer's official status is intentionally concealed. We do not interpret the language "in performance of duty" to require a defendant to have knowledge of the officer's official status since such a reading would all but strip the undercover officer of the protection the legislature intended to afford him. Rather, we hold that a defendant's lack of knowledge should only be considered in those cases in which a defendant acts with the *mistaken* belief that he is threatened with an intentional tort by a private citizen. That is not, however, quite the case here. Although appellant may in fact have believed that Officer Mioduszewski was a rival drug dealer, appellant's seizure of the officer's gun, which he then aimed at Mioduszewski, was a preemptive action, not one which is consistent

with self-defense. His knowledge or otherwise of the officer's status is, thus, under the present facts, irrelevant—there is no honest mistake involved in the situation here.

In short, on the facts before us, the offender must take his victim as he finds him. Appellee here was clearly a wrong-doer. Knowledge that the victim is a police officer is not an element of the crime of aggravated assault under 18 P.S. § 2702(a)(3) and need not be proven. Proof of intent to assault is sufficient.

The trial court was correct here, and the Superior Court in error. Accordingly, this matter is reversed and remanded to the Superior Court so that it may dispose of those issues which Appellee raised but which were not addressed on account of the Superior Court's disposition of the aggravated assault issue.

ZAPPALA, J., concurs in the result.

MONTEMURO, J., is sitting by designation.