COMMONWEALTH of Pennsylvania, Appellee,

v.

Christopher SHEPPARD, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 9, 2003.

Filed Nov. 25, 2003.

Jonathan B. Freedman, Philadelphia, for appellant.

John Nocito, Asst. Dist. Atty., Philadelphia, for appellee.

BEFORE: GRACI, OLSZEWSKI, and CAVANAUGH, JJ.

OPINION BY GRACI, J.:

¶ 1 Appellant, Christopher Sheppard ("Sheppard"), appeals from a judgment of sentence entered September 26, 2002, in the Court of Common Pleas of Philadelphia County. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

¶ 2 On March 13, 2002, Poncho Jackson ("Jackson") telephoned the Philadelphia police and reported that there were intruders in his residence. Officer Margurita Wilcox arrived at approximately 9:15 p.m., in full uniform, and met Jackson in front of the house. Jackson unlocked the door, led the officer inside, and informed her that the intruders were in the kitchen area. Officer Wilcox proceeded to the kitchen, where she encountered Sheppard.[1] According to Officer Wilcox, when she opened the kitchen door Sheppard "turned around with his gun facing me." N.T., 7/25/02, at 15:19–20. The officer drew her weapon and instructed Sheppard to drop his gun, which he failed to do. Officer Wilcox radioed for backup and moments later Officer Charles Lloyd entered the kitchen through the back door. Sheppard dropped his weapon and was taken into custody without incident.[2] Fourteen vials of crack cocaine were recovered from the scene.[3]

¶ 3 Following a bench trial in July 2002, Sheppard was convicted of burglary, 18 Pa.C.S.A. § 3502(c)(1), aggravated assault against a police officer by physical menace, 18 Pa.C.S.A. § 2702(a)(6), possessing an instrument of crime ("PIC"), 18 Pa.C.S.A. § 907, and possession of a controlled substance, 35 P.S. § 780–113(a)(16). The trial court entered a verdict of not guilty on

---

1. Another unnamed individual was present with Sheppard but was not charged as a co-defendant in this matter.

2. At Sheppard's trial, Officer Lloyd testified that when he entered the kitchen, he observed the gun on the floor next to Sheppard. N.T., 7/25/02, at 39, 41.

3. According to Officer Wilcox, the vials were recovered from Sheppard's person and from the floor at his feet. N.T., 7/25/02, at 33–34. Officer Lloyd testified that all of the drugs were in Sheppard's pocket. Id. at 42. This factual discrepancy is not relevant on appeal since Sheppard was ultimately acquitted of possessing a controlled substance.

charges of criminal conspiracy, criminal trespass, simple assault, carrying a firearm on a public street, and possession of a firearm without a license.

¶ 4 Sheppard proceeded to sentencing on September 26, 2002. As an initial matter, Sheppard's attorney called the court's attention to subsection (d) of the burglary statute, which provides that

A person may not be convicted both for burglary and for the offense which it was his intent to commit after the burglarious entry or for an attempt to commit that offense, unless the additional offense constitutes a felony of the first or second degree.

18 Pa.C.S.A. § 3502(d). Sheppard argued that he could not be convicted of burglary and the two underlying misdemeanor offenses of possession of a controlled substance and PIC. The trial court agreed with respect to the drug charge and entered a verdict of not guilty. Sheppard's conviction for possessing an instrument of crime remained.

¶ 5 At the Commonwealth's request, the trial court applied the mandatory sentencing provisions of 42 Pa.C.S.A. § 9712 and sentenced Sheppard to a term of imprisonment of five to ten years for the burglary offense. A concurrent term of four to ten years was imposed for aggravated assault, followed by a consecutive term of five years probation for PIC. Sheppard filed post-verdict motions, which were denied on November 6, 2002. This timely appeal followed.

¶ 6 Sheppard raises two issues on appeal, which may be summarized as follows:

1. Whether the evidence was insufficient to support a conviction for aggravated assault against a police officer by physical menace?

2. Whether the trial court erred in applying the mandatory minimum sentencing provisions of 42 Pa.C.S.A. § 9712 since, during the alleged burglary, Sheppard did not visibly possess a firearm that placed the burglary victim in fear? *See* Brief for Appellant, at 3.

## II. DISCUSSION

¶ 7 Sheppard first argues that the evidence was insufficient to support his conviction for aggravated assault against a police officer by physical menace. "When reviewing a sufficiency of the evidence claim, an appellate court must view all the evidence and reasonable inferences therefrom in a light most favorable to the Commonwealth as the verdict winner and must determine whether the evidence was such as to enable a factfinder to find that all of the elements of the offense[ ] were established beyond a reasonable doubt." *Commonwealth v. Rucci*, 543 Pa. 261, 670 A.2d 1129, 1132 (1996) (citation omitted).

In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. *Commonwealth v. Cassidy*, 447 Pa.Super. 192, 668 A.2d 1143, 1144 (Pa.Super.1995) (citations omitted). The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibili-

ty of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. *Commonwealth v. Valette*, 531 Pa. 384, 388, 613 A.2d 548, 549 (1992) (citations and quotation marks omitted).

*Commonwealth v. Repko*, 817 A.2d 549, 553 (Pa.Super.2003) (citing *Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa.Super.2001)).

¶ 8 The provision of the Crimes Code under which Sheppard was convicted states that "[a] person is guilty of aggravated assault if he ... (6) attempts by physical menace to put [a police officer], while in the performance of duty, in fear of imminent serious bodily injury[.]" 18 Pa. C.S.A. § 2702(a)(6), (c)(1). Sheppard claims that he was unaware that Officer Wilcox was a police officer when he turned toward her with his gun drawn.

¶ 9 Officer Wilcox admitted that she did not announce "police" before entering the kitchen, N.T., 7/25/02, at 27, and that, in her opinion, Sheppard was not expecting to see the police come through the kitchen door. *Id.* at 28–29. However, Officer Wilcox offered uncontradicted testimony that she was in full uniform during the encounter. *Id.* at 27. Sheppard stood directly in front of Officer Wilcox, pointing his gun at

her for a length of time sufficient for the officer to draw her own weapon, demand that Sheppard disarm himself, and radio for backup. We fail to see how Sheppard could not have known that Officer Wilcox was a police officer under these circumstances. We agree with the Commonwealth that Sheppard is really challenging the weight to be accorded Officer Wilcox's testimony, a determination that is not reviewable on appeal. *Repko, supra.* Viewing the evidence and all reasonable inferences therefrom in a light most favorable to the Commonwealth, we conclude that the evidence was sufficient to support Sheppard's conviction under § 2702(a)(6).[4]

■ ¶ 10 Sheppard next argues that the trial court erred in its application of the mandatory sentencing provisions of 42 Pa. C.S.A. § 9712:

(a) **Mandatory sentence.**—Except as provided under section 9716 (relating to two or more mandatory minimum sentences applicable), any person who is convicted in any court of this Commonwealth of a crime of violence as defined in section 9714(g) (relating to sentences for second and subsequent offenses), shall, if the person visibly possessed a firearm or a replica of a firearm, wheth-

---

4. In rejecting Sheppard's claim, the trial court relied upon *Commonwealth v. Flemings*, 539 Pa. 404, 652 A.2d 1282 (1995). In *Flemings*, our Supreme Court held that, in a prosecution under 18 Pa.C.S.A. § 2702(a)(3),

the defendant's ignorance of an officer's official status is relevant in those rare cases in which an officer fails to identify himself and then engages in a course of conduct which could reasonably be interpreted as the unlawful use of force directed either at the defendant or his property. Under such circumstances, a defendant would normally be justified in using reasonable force against his assailant. He could then be found to have exercised self defense, which would negate the existence of mens rea. *See United States v. Feola,* 420 U.S. 671,

686, 95 S.Ct. 1255, 1264–65, 43 L.Ed.2d 541 [ (1975) ].

*Flemings,* 652 A.2d at 1285. Although *Flemings* concerned a different subsection of the aggravated assault statute, we do not disagree with the trial court's analysis. Here, while Officer Wilcox may have failed to verbally identify herself, her act of opening the door and entering the kitchen can hardly be construed as a course of conduct which could reasonably be interpreted as an unlawful use of force directed either at Sheppard or his property. Turning around with his gun drawn was a purely knee-jerk reaction by Sheppard, not based on an "honest mistake." His knowledge, or lack thereof, regarding Officer Wilcox's status is simply irrelevant on these facts.

er or not the firearm or replica was loaded or functional, that placed the victim in reasonable fear of death or serious bodily injury, during the commission of the offense, be sentenced to a minimum sentence of at least five years of total confinement notwithstanding any other provision of this title or other statute to the contrary. Such persons shall not be eligible for parole, probation, work release or furlough.

42 Pa.C.S.A. § 9712(a). A "crime of violence" includes "... burglary of a structure adapted for overnight accommodation in which at the time of the offense any person is present...." 42 Pa.C.S.A. § 9714(g).

> Section 9712 applies when possession "manifests itself in the process of the crime." ... "Visible possession" means the gun was seen by or had a visible effect on the victim.... A preponderance of the evidence makes subsection (a) applicable. 42 Pa.C.S. § 9712(b).

*Commonwealth v. Townsend*, 747 A.2d 376, 379 (Pa.Super.2000), *appeal denied*, 563 Pa. 661, 759 A.2d 385 (2000) (quoting *Commonwealth v. Healey*, 343 Pa.Super. 323, 494 A.2d 869, 870 (1985)). Sheppard contends that he did not visibly possess a firearm that placed the victim in reasonable fear of death or serious bodily injury during the commission of the alleged burglary, Sheppard's claim fails.

¶ 11 In this case, it is undisputed that Sheppard brandished a gun after he entered Jackson's residence with the intent to commit a crime therein. *See* 18 Pa. C.S.A. § 3502(a) (defining offense of burglary). It is also undisputed that one of the people present, Jackson, was the victim of the burglary. In applying the mandatory sentencing provision, the trial court looked to the point in the encounter when Jackson followed Officer Wilcox into the kitchen, finding that "... Jackson was standing behind [Officer Wilcox] at the time and saw [Sheppard] point the gun too." Opinion, 1/28/03, at 3. The trial court's determination is supported by Jackson's own testimony on direct examination by the Commonwealth:

Q: What happened when you and the officer got to the kitchen?

A: We opened the door and saw someone with a gun.

[SHEPPARD'S ATTORNEY]: I'm sorry. What was that last thing?

THE WITNESS: We opened the door and we saw someone come in the back door and pick up a gun.

[SHEPPARD'S ATTORNEY]: I'm sorry.

BY [THE COMMONWEALTH'S ATTORNEY]:

Q: What happened next?

A: Me and the officers screamed to him to put it down.

Q: Did the person put it down immediately?

A: He put it down.

Q: Do you see that person in the court today?

A: Yes.

Q: Could you point him out for us?

A: I think he's sitting over there.

Q: Indicating for the record, Your Honor, the defendant at the bar of the court.

N.T., 7/31/02, at 11–12.[5]

¶ 12 As his testimony makes clear, Jackson not only saw the gun in Sheppard's

---

5. Attached as an exhibit to Sheppard's post-sentence motions was a transcript of an interview of Jackson conducted by a police detective on the night of the incident. When asked, "Did you ever see any of the males have a gun?" Jackson responded, "No."

possession but reacted by screaming at the armed intruder. Thus, Sheppard not only "visibly possessed" the weapon but, in doing so, provoked a reaction from the victim that demonstrated a reasonable fear of death or serious bodily injury. In light of the foregoing, we find that the Commonwealth offered the preponderance of evidence necessary to invoke 42 Pa.C.S.A. § 9712. The trial court committed no error by imposing the minimum sentence required by the statute.

## III. CONCLUSION

¶ 13 We have reviewed the record and the issues raised by Sheppard on appeal. Having done so, we find that the evidence was more than sufficient to support Sheppard's conviction for aggravated assault against a police officer by physical menace. We also find no error by the trial court in applying the mandatory sentencing provisions of 42 Pa.C.S.A. § 9712. The Commonwealth proved by a preponderance of the evidence that Sheppard visibly possessed a firearm that placed the victim in reasonable fear of death or serious bodily injury during the commission of a burglary. Accordingly, the judgment of sentence is affirmed.

¶ 14 Judgment of sentence affirmed.

Sheppard offers this statement as support for his claim that the trial court erred in applying the mandatory sentencing provision for offenses committed with firearms. The fact remains, however, that Jackson offered the testimony quoted in text while under oath. His recollection at trial was also corroborated by Officer Wilcox's testimony. In any event, any inconsistencies between Jackson's pre-trial statement and his trial testimony relate to the weight to be accorded to the latter. Such a determination is within the purview of the trial court and is not reviewable on appeal. *Repko, supra.*