J-A31009-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| DOMINIC COSMO MENNITI, | |
| Appellee | No. 686 EDA 2016 |

Appeal from the Order Entered February 18, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0013068-2011

BEFORE:  BENDER, P.J.E., MOULTON, J., and FITZGERALD, J.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED JANUARY 18, 2017**

The Commonwealth appeals from the trial court's order granting a new trial to Appellee, Dominic Cosmo Menniti, based on the court's determination that Appellee's conviction, for aggravated assault and disarming a police officer, was against the weight of the evidence.  After careful review, we affirm.

The following is an extremely brief summary of the evidence adduced at trial, stemming exclusively from the testimony of the arresting officers which, by the very nature of the claim before this Court, was called into question by the trial court's order granting a new trial on weight-of-the-evidence grounds.  The incident leading to Appellee's arrest occurred in the

_____

[*] Former Justice specially assigned to the Superior Court.

early morning hours of July 21, 2011, in the 2300 block of South Warnock Street in South Philadelphia. Plain clothes Police Officers Charles James and Nicholas Colville were patrolling the area in an unmarked police car when they observed Appellee looking into a vehicle, which they believed he was doing for the purpose of 'casing' it, that is, examining the vehicle in order to determine whether it was a viable and/or lucrative target for the commission of a theft. The officers never observed Appellee make any attempt to break into the vehicle he was observed 'casing,' nor any other. Nevertheless, after observing Appellee's suspicious behavior, the officers began to follow him in their unmarked patrol car.

At some point during the pursuit, Officer James got out of the unmarked patrol car and began following Appellee on foot. Appellee apparently became aware he was being followed, and began looking in the direction of the officers' vehicle. When Appellee got to an intersection, he walked around a corner out of the officers' view, and then peeked back around the corner, eyeing the officers' vehicle again. Soon thereafter, Officer James walked around that same corner, briefly addressed Appellee verbally,[1] at which time Appellee starting running away from him. Officer James gave chase for a few blocks before Appellee stopped.

_____

[1] Officer James claimed he first identified himself as a police officer to Appellee, by saying, "[Are] you all right[?] I'm a police officer." However, as will be discussed *infra*, how and when Officer James identified himself as
*(Footnote Continued Next Page)*

Officer James ordered Appellee to place his hands on a nearby car, and claimed that he again identified himself as a police officer by displaying the badge on his hip that had been previously covered by his shirt. Officer James then ordered Appellee to place his hands on a nearby wall, where he attempted to handcuff him. A prolonged struggle ensued when Appellee resisted being handcuffed. Early in the fracas, the handcuffs fell to the ground, at which time Officer James unholstered his firearm, put his finger on the trigger, and instructed Appellee to relax. Officer James again tried to handcuff Appellee, but Appellee grabbed the handcuffs, causing a scuffle that brought both men to the ground. As the men wrestled on the ground, Officer James' radio fell out of his pocket, and his firearm fell out of its holster. Officer James immediately turned his attention to the firearm, attempting to secure it, while continuing to wrestle with Appellee. At this point, Officer James claimed that Appellee also tried to grab the firearm. Eventually, Officer James fired a shot, but claimed that Appellee continued to scuffle with him after a brief pause. Officer James then fired another shot after struggling to maintain control of his firearm, which he eventually lost. However, Officer James never observed Appellee with control of the gun. Soon thereafter, Officer Colville arrived on the scene, and testified that he saw Appellee with a firearm in his hand. He claimed that he told Appellee to

_(Footnote Continued)_ ―――――――――

a police officer to Appellee was a critical factor in the trial court's determination that the verdict was against the weight of the evidence.

- 3 -

drop the firearm, but he could not remember what words he used to convey that command. When Appellee did not drop the firearm, Officer Colville fired four shots at him, striking Appellee in the abdomen, left groin, and the upper portion of his right arm. Officer James suffered some abrasions and a temporary loss of his hearing. Appellee was arrested, at which time marijuana and drug paraphernalia were found on his person.

Based on these events, Appellee was charged with aggravated assault of a police officer,[2] assault of a law enforcement officer,[3] disarming a law enforcement officer,[4] simple assault,[5] person not to possess a firearm,[6] carrying a firearm in public in Philadelphia,[7] possessing an instrument of crime,[8] reckless endangerment,[9] resisting arrest,[10] and possession of drug

---

[2] 18 Pa.C.S. § 2702(a)(3).

[3] 18 Pa.C.S. § 2702.1.

[4] 18 Pa.C.S. § 5104.1.

[5] 18 Pa.C.S. § 2701.

[6] 18 Pa.C.S. § 6105.

[7] 18 Pa.C.S. § 6108.

[8] 18 Pa.C.S. § 907.

[9] 18 Pa.C.S. § 2705.

[10] 18 Pa.C.S. § 5104.

paraphernalia[11] and marijuana.[12]  By order dated November 5, 2014, the trial court granted Appellee's motion to suppress the seized evidence, thereby dismissing the drug-related charges.[13]  Just prior to trial, the Commonwealth *nolle prossed* all but three of the remaining charges, leaving only aggravated assault of a police officer, disarming a law enforcement officer, and carrying a firearm in public in Philadelphia.  Following a jury trial, which concluded on November 14, 2014, Appellee was convicted of the first two offenses and acquitted of the latter.  Additionally, on the verdict slip, the jury twice indicated its finding that Appellee did not possess a firearm during his encounter with Officers James and Colville.

On November 21, 2014, Appellee filed a timely post-trial motion for extraordinary relief seeking, *inter alia*, a new trial based on a challenge to the verdict on weight-of-the-evidence grounds.  On February 18, 2016, the trial court granted Appellee's motion, thereby awarding him a new trial.

On March 2, 2016, the Commonwealth filed a timely notice of appeal from the order granting Appellee a new trial, and contemporaneously filed

_____

[11] 35 P.S. § 780-113(a)(32).

[12] 35 P.S. § 780-113(a)(31).

[13] The trial court concluded that Appellant was subjected to an illegal investigative detention, having determined that the officers lacked a reasonable suspicion to stop him.  **See** N.T. Suppression, 11/5/14, at 69-71.

an unprompted Pa.R.A.P. 1925(b) statement. On April 18, 2016, the trial court issued its Rule 1925(a) opinion.

The Commonwealth now raises the following question for our review: "Did the [trial] court contravene the governing legal standard when it ordered a new trial based on the weight of the evidence?" Commonwealth's Brief at 7.

We apply the following standard of review to a challenge to a trial court's determination that a verdict is against the weight of the evidence:

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:
>
>> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>>
>> This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:
>>
>>> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason,

as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (internal citations omitted).

The Commonwealth argues that the trial court thrice abused its discretion in determining that the jury's verdict was against the weight of the evidence. First, the Commonwealth claims the trial court "conflate[d] the legal standards for challenges to the sufficiency and weight of the evidence." Commonwealth's Brief at 7. In support of this claim, the Commonwealth points to the trial court's opinion, wherein the court stated that it granted Appellee's motion "based upon its agreement with him that the evidence was insufficient and/or lacked sufficient weight to convict[.]" Trial Court Opinion (TCO), 4/18/16, at 6. The court also stated that it found that "the facts were of such lack of sufficiency and weight to convict to the extent that the verdict[] shocked it[]s conscience[.]" ***Id***. Elsewhere, the Commonwealth complains, the trial court cited the governing standard for sufficiency claims.

The Commonwealth's argument is not convincing. The trial court certainly expressed its opinion that it believed the evidence was both insufficient and that the verdict was against the weight of the evidence. However, the trial court clearly did not rule on Appellee's sufficiency claim, as it only granted Appellee a new trial, which is not the appropriate remedy

- 7 -

for a successfully argued sufficiency claim. Moreover, the passages cited by the Commonwealth do not even appear in the section of the court's opinion addressing the weight of the evidence. The statements instead appear in the portion of the opinion titled, "Jurisdiction Over Interlocutory Appeals." TCO at 3.

In the section addressing the weight-of-the-evidence claim, the trial court did cite the standard for sufficiency claims. *Id.* at 9 (quoting *Commonwealth v. Karkaria*, 625 A.2d 1120 (Pa. 1983)). However, the court immediately thereafter cited the appropriate and correct standard applicable to weight-of-the-evidence claims. *Id.* (quoting *Commonwealth v. Sullivan*, 820 A.2d 795 (Pa. Super. 2003)). The court then stated, "[in] its review of the evidence *infra*, the court will demonstrate that the verdicts were clearly not supported by it." *Id.* No such statement appeared following the court's citation of the sufficiency standard.

The Commonwealth's hypercritical analysis of the trial court's text does not convince us that the court abused its discretion by conflating the sufficiency and weight-of-the-evidence standards. Rather, a fairer reading of the court's opinion demonstrates that while it believed that the evidence was *both* insufficient *and* against the weight of the evidence, it only granted relief based on Appellee's weight-of-the-evidence claim. That the court was of both opinions does not render its weight-of-the-evidence analysis invalid. Moreover, the trial court's opinion regarding the sufficiency of the evidence, whether correct or not, is immaterial to the matter before this Court. The

Commonwealth has appealed from an order granting a new trial on weight-of-the-evidence grounds. Thus, the trial court's statements regarding the sufficiency of the evidence are superfluous.

It is often stated that "[a] motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (citing *Commonwealth v. Whiteman*, 485 A.2d 459 (Pa. Super. 1984)). From the platform of this rule, the Commonwealth engages in another hypercritical attack on the trial court's opinion, arguing that, "through a number of hyperbolic formulations," the trial court asserted "that there was insufficient evidence that Officer James displayed his badge to [Appellee] to put him on notice that he was dealing with a police officer." Commonwealth's Brief at 21. The Commonwealth then fails to cite to any specific "hyperbolic formulation," and instead cites to portions of the transcripts in an attempt to demonstrate the sufficiency of the evidence. *Id.* at 21-24. Again, the sufficiency of the evidence is not a matter before this Court, and therefore we need not address it. Moreover, the Commonwealth has waived any specific complaint about the trial court's purported 'hyperbolic formulations' by failing to direct our attention to the portion of the court's opinion where such statements appear.

We are satisfied from our review of the record that the Commonwealth has failed to prove that the trial court abused its discretion by conflating the sufficiency and weight-of-the-evidence standards. The trial court's thorough

and well-reasoned opinion did not conflate those standards but, instead, in what might be at worst described as an exercise in rhetorical excess, the court attempted to buttress its weight-of-the-evidence analysis with asides regarding its opinion on the evidence's sufficiency. While unessential to the court's weight-of-the-evidence analysis, it was not unreasonable, much less "manifestly unreasonable," for the court to so, as it correctly applied the weight-of-the-evidence standard by engaging in a meticulous dissection of the rampant amount of conflicting evidence in this case.

Second, the Commonwealth argues that the trial court abused its discretion by "conflating the propriety of the arrest and the propriety of the jury's verdict." Commonwealth's Brief at 24. Essentially, the Commonwealth contends that circumstances surrounding the arrest were irrelevant to the jury's verdict, citing the law that "the lawfulness of [an] arrest is irrelevant to the charge of aggravated assault," **Commonwealth v. Biagini**, 655 A.2d 492, 498 (Pa. 1995), and that the use of force is not justified "to resist an arrest which the actor knows is being made by a peace officer, although the arrest is unlawful[,]" 18 Pa.C.S. § 505(b)(1)(i). The Commonwealth contends the trial court abused its discretion by failing to apply these legal precepts to its weight-of-the-evidence analysis.

Our review of the record and applicable case law belies the Commonwealth's claim. Appellee was convicted under 18 Pa.C.S § 2702(a)(3), which required the Commonwealth to prove that he "attempt[ed] to cause or intentionally or knowingly cause[d] bodily injury to

[a police officer]" who was "in the performance of [his or her] duty."  18 Pa.C.S § 2702(a)(3), (c)(1).  Notably, proof of an officer's status is not, strictly speaking, an element of that crime.  *See Commonwealth v. Flemings*, 652 A.2d 1282, 1285 (Pa. 1995) ("We do not interpret the language 'in performance of duty' to require a defendant to have knowledge of the officer's official status….").  However,

> [a] defendant's ignorance of an officer's official status is relevant in those rare cases in which an officer fails to identify himself and then engages in a course of conduct which could reasonably be interpreted as the unlawful use of force directed either at the defendant or his property.  Under such circumstances, a defendant would normally be justified in using reasonable force against his assailant.  He could then be found to have exercised self defense, which would negate the existence of mens rea.

*Id.* at 1285.

This was the essence of the case at issue.  Indeed, in its recitation of applicable law, the trial court quoted extensively from *Flemings* (thereby demonstrating its knowledge of the general rule), while emphasizing the language defining the exception.  *See also id.* ("[W]e hold that a defendant's lack of knowledge should only be considered in those cases in which a defendant acts with the mistaken belief that he is threatened with an intentional tort by a private citizen.").

Thus, in this case, some of the same circumstances which were essential to determining whether Appellant was lawfully arrested were also relevant to whether Appellant held a "mistaken belief that he [was] threatened with an intentional tort by a private citizen."  *Id.*  It is in this

- 11 -

context that the trial court discussed conflicting evidence regarding Officer James' behavior, and the purported basis he offered for subjecting Appellee to an investigative detention.[14,15]   Thus, we reject the Commonwealth's claim that consideration of such evidence, in the trial court's analysis of the weight-of-the-evidence issue, was an abuse of discretion.

Finally, the Commonwealth asserts that the trial court abused its discretion by simply substituting its credibility determination for that of the

_____

[14] Both categories of evidence could have impacted whether Appellee had a mistaken belief that he was being assaulted by a private citizen.  The manner in which the first category affects such a determination is most obvious; how and when Officer James, who was not in uniform, identified himself during the course of events that occurred are clearly pertinent to whether Appellee's mistaken belief was reasonable.  The latter category of evidence, regarding Appellee's conduct which gave rise to the officers' suspicion, is also relevant for that purpose.  Hypothetically speaking, if a defendant had just robbed a bank, it would hardly be reasonable for him to claim that he mistakenly believed the person attempting to handcuff him outside that bank was a private citizen intending to commit an intentional tort against him.  Here, however, Appellee's observed behavior (looking into parked vehicles) was not so inherently criminal; it was merely suspicious from the officers' viewpoint.  When contrasted with the hypothetical scenario, since he had not committed a crime in the moments preceding his interaction with Officer James, it was more reasonable for Appellee to have believed he was not being followed and then assaulted by a police officer.

[15] The Commonwealth attempts to argue, under the auspices of this sub-claim, that the trial court erred when it determined that the investigative detention of Appellee was unlawful. Commonwealth's Brief at 24-26.  This is inappropriate in the context of a weight-of-the-evidence claim and, nevertheless, it has been waived.   The Commonwealth did not preserve any such claim in its Rule 1925(b) statement.  "Any issues not raised in a 1925(b) statement will be deemed waived." *Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998).

jury. The Commonwealth argues that this is because "not a single witness claimed that [Appellee] was unaware Officer James was a police officer, or that Officer James did not show [Appellee] his badge before frisking and attempting to arrest him." Commonwealth's Brief, at 27.

We disagree. The Commonwealth, in contravention of our standard of review, construes the evidence in question in a light most favorable to the Commonwealth, which, while the appropriate lens through which to analyze sufficiency claims, is not applicable to weight-of-the-evidence claims. The Commonwealth does this by isolating aspects of Officer James' testimony which would render the evidence *sufficient* to support Appellee's convictions. As the Commonwealth repeatedly acknowledges in its brief, a weight-of-the-evidence claim concedes the evidence's sufficiency.

Here, the problem was that Officer's James' testimony was so inconsistent and contradictory internally, in relation to Officer Colville's testimony, as well as being at odds with the Commonwealth's own, disinterested witnesses' testimony, that the jury's verdict shocked the conscience of the trial court. These inconsistencies were not confined solely to the issue of when and how Officer James showed his badge to Appellee.[16]

_____

[16] These serious and extensive inconsistencies were demonstrated in great detail in the factual history provided by the trial court. TCO at 14-43. The most pertinent inconsistencies, with respect to Appellee's defense, were then highlighted by the trial court in its legal analysis. *Id.* at 43-48. The Commonwealth's argument focuses only on a single aspect of this analysis,
*(Footnote Continued Next Page)*

- 13 -

Nevertheless, the fact that Officer James showed Appellee a badge, while potentially *sufficient* to undermine Appellee's mistaken belief, is again an argument directed at the sufficiency of the evidence, not its weight. In its opinion, the trial court thoroughly and convincingly discussed the rampant inconsistencies in the Commonwealth's case which led the court's conscience to be shocked by the verdict. In determining that the jury's verdict was against the weight of the evidence, the court did not rely solely on inconsistencies and/or contradictions regarding Officer James' testimony addressing the timing and circumstances of his claim that he showed Appellee his badge before attempting to handcuff him. The Commonwealth's failure to contend with the vast number of other contradictions and inconsistencies discussed by the court in its opinion, while focusing on a single aspect of the court's decision, is misleading with respect to the record below. Therefore, the Commonwealth has failed to convince us that the trial court merely substituted its credibility determination for that of the jury.

In sum, therefore, we ascertain no abuse of discretion in the trial court's granting Appellee a new trial on weight-of-the-evidence grounds. The Commonwealth has failed to show that the trial court misapplied the

_(Footnote Continued)_ ——————————————

giving the false impression that it was the sole basis for the trial court's decision.

- 14 -

law, ruled in a manifestly unreasonable manner, or demonstrated partiality, prejudice, bias or ill-will in its decision.

Order **_affirmed_**.

Justice Fitzgerald joins this memorandum.

Judge Moulton concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>1/18/2017</u>